Samuel K. Thomas *vs.* J. Willcox Brown and Charles D. Lowndes, trading as Brown & Lowndes. Harry Welles Rusk, Permanent Trustee in Insolvency, of Samuel K. Thomas, *vs.* Same. Same *vs.* Same. Samuel K. Thomas *vs.* Same.

*Attachment—Lien—Insolvency—Partnership debt—Fraud —Evidence.*

The levy of an attachment on mesne process constitutes a valid lien, which is not to be impaired by a proceeding in insolvency, unless the insolvent or bankrupt law expressly declares it dissolved.

The provision of the insolvent law of this State that declares that "no creditor shall acquire a lien by *fieri facias* or attachment, unless the same be levied before the filing of the petition" in insolvency, is not confined to attachments levied by way of execution on a judgment already obtained, but includes attachments levied on mesne process before the filing of the petition; and consequently, an attachment on mesne process, issued and levied before the application for the benefit of the insolvent law, is a lien which the creditor has the right to go on and perfect, notwithstanding the insolvency of the defendant.

Where the debt due to the plaintiffs is a partnership debt, and the money attached is partnership assets, and one of the partners leaves the State and the writ cannot be served on him, but is served on the other partner, who appears and contests the claim, a judgment against such remaining partner is sufficient to perfect the attachment, as all the assets of the firm in the State devolved, both in law and fact, upon him. And this is so whether one or both of the partners have taken the benefit of the insolvent laws.

The evidence showed that T. one of the defendant firm got from the plaintiffs two bonds, for the use of which he gave a firm check for $1160, the then value of the bonds; that on the same day he got from other bankers and brokers other bonds and securities for which he gave checks of the firm, the aggregate amount of the checks being $14,786.40; that the whole amount of the firm's

Thomas *vs.* Brown & Lowndes. Rusk *vs.* Same.

credit in bank was $10,335; that two of the checks aggregating $6185, were paid, leaving $4150, on deposit, and checks outstanding amounting to $8601.40; that on the night of the day on which these transactions took place, or on the following day, T. absconded and has never returned; that none of the bonds or securities so obtained from the plaintiffs and other bankers and brokers, have ever been returned or accounted for; that the checks given by the defendants came to the bank on which they were drawn, through the Clearing House, and payment was refused. HELD:

That these facts were sufficient evidence of fraud to be taken and weighed by the Court, sitting as a jury, and were properly admitted in evidence.

APPEALS from the Superior Court of Baltimore City.

J. Willcox Brown and Charles D. Lowndes, co-partners, trading as Brown & Lowndes, sued out of the Superior Court of Baltimore City an *attachment on original process,* and had it laid in the hands of the Farmers and Merchants' National Bank of Baltimore, on the 9th of August, 1882, to cover any moneys which might be in its hands belonging to Frank A. Thomas and Samuel K. Thomas, co-partners, trading as James P. Thomas & Co., as security for the payment of a debt from the said James P. Thomas & Co., to the said Brown & Lowndes, alleged to have been fraudulently contracted, and then due, amounting to the sum of $1160.00. On the return of the writ, it was found that Samuel K. Thomas had been summoned, and that Frank A. Thomas was *"non est,"* that he, Frank A. Thomas, had left the city on the night of the fifth or on the sixth of August, 1882, and, up to the time of the trial of these cases in the Court below, had not returned. On the 26th of August, 1882, Samuel K. Thomas applied for relief under the insolvent laws, and, on the 23d of November, 1882, he appeared by attorney, and pleaded, on behalf of his late co-partnership, *nil debet* and *non assumpsit,* to the short note case. On the 15th of September, 1882, the Farmers and Merchants' National Bank filed its answer in the attachment case, and admitted that at

33         v. 67.

the time of the laying of the attachment in its hands, it held the sum of $4152.25 to the credit of the said James P. Thomas & Co., and that other attachments were also subsequently laid in its hands, which exceeded, in the amount of their claims, the said sum of $4152.25. On the 29th of January, 1886, Harry Welles Rusk, who had in the meantime been appointed permanent trustee in insolvency of Samuel K. Thomas, filed his petition in the attachment suit, and moved the Court to quash the attachment, which the Court refused to do on the 8th of June, 1886. On February 1st, 1887, Samuel K. Thomas, as a further defence in the short note case, pleaded his discharge, as an insolvent debtor, by the Court of Common Pleas of Baltimore City, on the 22d day of January, 1883, from all debts and contracts made by him prior to the filing of his application on the 26th of August, 1882, and that the claim sued on in this case accrued prior to the said 26th day of August, 1882. And on the said first of February, 1887, the said Harry Welles Rusk, as said permanent trustee in insolvency of the said defendant, Samuel K. Thomas, filed his plea and claim of the said money, attached in the hands of the said Bank, and prayed judgment that the plaintiffs do not have condemnation of the same.

On the 8th of February, 1887, the plaintiffs filed a special replication to the said plea of discharge of the defendant, to which the defendant demurred, and the Court overruled the demurrer, and issues were joined. And on the said 8th of February, 1887, the plaintiffs filed a motion to strike out the claim and plea of the said Harry Welles Rusk, for reasons assigned, and the Court granted the motion, because of said reasons. And on the 9th of February, 1887, the issues were submitted by agreement to the Court for determination, without the intervention of a jury, which found a verdict for the plaintiffs on the first issue for $1160.00, and a verdict for the plaintiffs on the second issue for $1160.00; and

on the 28th day of March, 1887, a qualified judgment was entered against the said Samuel K. Thomas for $1160.00, and a judgment of condemnation in favor of the plaintiffs against the garnishee for $1160.00, from both of which judgments appeals were taken by the defendant, Thomas, and the permanent trustee, Rusk, respectively, to this Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, and BRYAN, J.

*Hutton L. Bouldin*, and *James A. L. McLure*, for the appellants.

*D. S. Briscoe*, and *Charles Marshall*, for the appellees.

STONE, J., delivered the opinion of the Court.

The important question in this case is, the proper construction of that part of our insolvent law that declares that "no creditor shall acquire a lien by *fieri facias*, or *attachment*, unless the same be levied before the filing of the petition." This case is an attachment on *mesne process*, and it is strenuously argued by the appellants, that the attachment mentioned in the statute is confined to attachments levied by way of execution on a judgment already obtained, and does not include attachments levied on mesne process before the filing of the petition in insolvency. There is no dispute as to the fact that the attachment in this case was *issued and levied before* the application for the benefit of the insolvent law.

It is certainly true as a general rule, that in the administration of an insolvent's estate, no lien lawfully and *bona fide* acquired before the insolvency is disturbed, or displaced by the application for the benefit of the Act. While this is undoubtedly the general rule, exceptions have been made in our insolvent system, in several instances, where

the liens have been made, or attempted, by the *voluntary act* of the insolvent himself. But the only exception made by our insolvent law in the case of a *bona fide* creditor of the insolvent pursuing with diligence his legal remedy against the insolvent, is in the section we have quoted. Apart from that provision a creditor, who had obtained his judgment and issued a *fieri facias* against the insolvent, obtained a lien on the personal estate of his debtor from the time the execution came into the hands of the sheriff. This law the insolvent system of our State modified, so as to make the lien attach only from the time of the *actual* levy, and also made the same provision as to attachments. The insolvent Act does not profess to alter the law of lien in any respect except as to *the time* at which in such case it should attach.

Attachment cases are exceptional ones. Some circumstance must exist out of the ordinary run, before the remedy by attachment can be resorted to. Thus the debtor must be a non-resident of the State, or he must abscond, or have contracted the debt with a fraudulent purpose, before the extraordinary remedy allowed by the attachment laws can be resorted to. For these exceptional cases the law has provided an exceptional remedy. It allows such debtor's property to be seized and held, on mesne process, until the debt is paid. It treats the *fraudulent* debtor (and we think wisely and properly), with less consideration than the honest one.

This is certainly so in the ordinary case, and where no insolvent law intervenes. Does the insolvent law deprive the creditor of his right he would otherwise have had?

The words of the statute are general, and speak of "*fieri facias,* or attachment," and certainly draw no distinction between attachments on judgments by way of execution, and attachments on original process. All the statute deals with is the actual levy. Before we can restrict the meaning of the word attachment, and confine

it to one species of attachment only, some good reason, or some authority must be shown for our so doing.

But we fail to see any reason why the insolvent law intended to allow the lien of an attachment by way of execution, and to abolish the lien of the attachment on original process. In both cases creditors are diligently pursuing their legal rights, and we can see no ground to discriminate between them.

It is a plain rule in the construction of two different statutes, upon different subjects, that they should stand each in its entirety, if they can, and that one should not be held to repeal the other, or any part thereof, except by plain words or necessary implication. The construction contended for by the appellants would certainly repeal a part of the attachment law as applied to insolvents, and this without any express words, or in our opinion, any necessary implication.

But it has been argued that the lien of the attachment in this case, is an inchoate lien, and can only be perfected by the ascertainment of the debt of the creditor, and that the money attached was the money of the debtor, and then it will be condemned. This is all true, but an inchoate lien is still a lien. The lien attaches, subject of course to the future order of the Court. But the lien of an attachment, by way of execution, is also only an inchoate lien. The officer in the latter case lays the attachment in the hands of the garnishee, and notifies him to come into Court and show cause why the money should not be condemned, and that lien is not perfected until the Court enters the judgment of condemnation. One species of attachment is, therefore, equally inchoate as the other.

But we are not without the authority of several well considered cases upon the point we have been considering. The case of *Peck, et al. vs. Janness, et al.,* 7 *Howard,* 612, was this: The plaintiffs, residents of New Hampshire, issued an attachment on mesne process against the defend-

ants. After the attachments were laid the defendants took the benefit of the United States Bankrupt Law, and the assignee claimed the property so attached. The Superior Court of New Hampshire decided against the assignee, and the case was taken to the Supreme Court of the United States.

By a proviso ·in the bankrupt law, then in force, it was declared that the law "should not annul, destroy or impair any liens," &c., and the principal question in the case was whether an *attachment on mesne process* constituted a lien ; and the Supreme Court unanimously declared that it did.

The same arguments were used in that case as in this, that the lien was only an imperfect one, and was to be perfected by the judgment, &c.

The case of *Bates vs. Tappan, .99 Mass.,* 376, was decided in 1868, and under the Bankrupt Law of 1867. This law · in *express terms* dissolves all attachments on mesne pro-· cess laid within four months from the date of the application. The Supreme Court of Massachusetts, however, decided that an attachment on mesne process, laid more than four months before·the application was valid.

The case of *Gibson vs. Green,* 45 *Miss.,* 218, is to the same effect.

These cases and others that might be cited, clearly establish the doctrine that the levy of an attachment on mesne process, constitutes a valid lien, which is not to be impaired by a proceeding in insolvency, unless the insolvent or bankrupt law expressly declares it dissolved.

We therefore think that the attachment in this case, was a lien which the creditor had the right to go on and perfect, notwithstanding the insolvency of the defendant, and that the judgment is in the right form, being that sanctioned by the Supreme Court in the case above referred to.

The debt due to the plaintiffs was a partnership debt, and the money attached was partnership assets. One partner left the State, and the writ could not be served

on him, but it was served on the other partner, who appeared and contested the claim. Upon the absconding of one of the partners, all the assets of the firm in the State devolved, both in law and fact, upon the remaining partner, and in the proceedings he represented the firm, and the judgment against him was sufficient to perfect the attachment.

We have treated this question as if both the partners had taken the benefit of the insolvent laws, instead of one only. The principle is the same.

The motion to quash the attachment was properly overruled. The affidavit is sufficient, and the check given by defendants was the cause of action. The transaction was this: The defendants agreed to pay to Brown & Lowndes the amount of the check, upon the agreement on their part to let the defendants have the use of certain bonds. The promise to pay the money was an *unconditional promise* for a valuable consideration, and had nothing to do with any future transactions. The plaintiffs did let defendants have the bonds upon their promise to pay the money, then and there, and which they failed to do.

Two exceptions were taken at the trial of the case. One to the admissibility of testimony, and the other to the granting of the plaintiffs' prayer and the refusal of the defendants' prayers.

The defendants' exception to the testimony rests chiefly upon its legal sufficiency to prove the fraudulent contraction of the debt. The testimony on that point is this:

Frank A. Thomas, one of the defendant firm, got from plaintiffs two bonds, for the use of which he promised to pay the amount of the check, to wit, $1160, the then value of the bonds. That this was on Saturday, the 5th of August, 1882. That *on the same day* he got from other bankers and brokers other bonds and securities, and for which he gave the checks of the firm, and that the aggregate amount of checks so given by him was $14,786.40. That

the whole amount to their credit in bank was $10,335. That two of the checks amounting in the aggregate to $6185, were paid, leaving money on deposit, $4150, and checks outstanding amounting to $8601.40. That these transactions took place on a Saturday, and Frank A. Thomas left Baltimore that night or next day, and has never since returned. That none of the bonds or securities so obtained from the plaintiffs, and other bankers and brokers, have ever been returned or accounted for. The checks given by defendants came to the bank on which they were drawn, through the clearing house, on Monday, 7th, and payment was refused.

These facts were certainly sufficient evidence of fraud to be taken and weighed by the Court. With the conclusion which the Court, (sitting as a jury,) came to upon the evidence, we have nothing to do. Its legal sufficiency only is before us, and the Court committed no error in admitting this evidence. The other exception relates to the prayers. The prayer of the plaintiffs, which was granted, stated the law correctly.

It stated that if the Court found the indebtedness of the defendants to the plaintiffs, and that the debt was fraudulently contracted, and that the attachment was laid in the hands of the garnishee, and that the garnishee had funds of defendants sufficient to pay the claim, then that plaintiffs were entitled to a verdict against the garnishee for their claim, although one of the parties had taken the benefit of the insolvent law after said attachment was laid.

From what we have already said this prayer was correct. We do not think it necessary in the view we have taken of this case to notice some other points argued.

*Judgment affirmed*
*in all the cases.*

(Decided 23d June, 1887.)

Thomas *vs.* Brown & Lowndes. Rusk *vs.* Same.

On the 27th June, 1887, a motion was filed by the appellants, asking the Court to grant them a re-argument in the foregoing case, and subsequently they filed a brief in support of the motion. The Court overruled the motion, and through Judge STONE delivered the following opinion :

The appellants in this case base their motion for a re-argument principally upon the fact that this Court did not notice in its opinion heretofore filed, the application of the trustee, Rusk, claiming the property. That there may be no doubt upon that point we will now give our views upon it.

It appears that Rusk, the permanent trustee of Thomas, the insolvent, filed a bill in the Circuit Court of Baltimore City, after the levying of the attachments in this case, claiming the fund. The appellees answered, claiming that said Rusk had full and complete remedy at law, and had no right to invoke the jurisdiction of the Circuit Court, or to withdraw said claims from the cognizance of the Court of law where the said claims then were.

Stein Brothers had also previously filed a bill in equity, claiming the money in the Farmers and Merchants' Bank. The Farmers and Merchants Bank also filed a bill of interpleader. The Circuit Court of Baltimore City passed an order consolidating these three cases, and after their consolidation passed the following order, as shown by the record :

"The attaching creditors were allowed to prosecute their attachments in the Courts of law where they were pending, and in case of their obtaining judgments of condemnation against the garnishee, the said Bank, they should be restrained and enjoined from issuing execution upon their said judgments, but should bring the same into the said Circuit Court, in order that it should and might determine out of what funds or amount, if any, and in what manner, the same should be satisfied, and to what amounts ; and that all questions as to the amount in the

hands of the said Bank, subject to said attachments, and as to the rights and equities of the said firm of Stein Brothers, and Rusk, trustee, in the suits in this Court, between themselves and the attaching creditors, and the said Bank, be reserved for adjudication ; and that said writ of injunction be so modified that Stein Brothers and said Rusk, trustee, might proceed in the consolidated cases, to assert and have determined the respective rights and equities by them claimed."

Rusk, the permanent trustee, after the above order, appeared in the attachment cases, and claimed the money attached, by virtue of his appointment as trustee in insolvency, and that by virtue of such appointment the money vested in him for the *equal benefit* of all the creditors of Samuel K. Thomas; thus virtually claiming that his appointment as trustee dissolved the attachments. This claim was overruled by the Superior Court of Baltimore, in which the attachment cases were pending, and that Court went on to try the cases, and gave judgment for the appellees, the plaintiffs in the attachments.

Three questions were involved in the trial of the attachment cases. First, the regularity of the proceedings ; secondly, the sufficiency of the evidence ; and thirdly, the question whether a *bona fide* creditor acquired a lien on the property of the insolvent by an actual levy upon *mesne process* before the insolvent applied for the benefit of the Act. The Superior Court decided all these questions in favor of the plaintiffs, the appellees, and the decision was affirmed by this Court.

The decision of the question whether the actual levy upon mesne process, constituted a lien on the property attached was vital to these attachment cases. For no matter how regular the proceedings, or how clear the testimony, if the contention of the appellants was correct, that the mere appointment of the permanent trustee, and his qualification as such, vested the property in him dis-

charged from any lien, that was the end of the case. This question we do not understand, the Circuit Court sitting as a Court of equity, undertook or intended to decide, but was one of the questions that that Court remitted to the Court at law for its decision. Had we so construed the decree of the Circuit Court, that question we should have considered as a *res judicata,* as there was no appeal from that decree.

But the Court in this case did not mean to interfere with the decree of the Circuit Court restraining an execution upon the judgment, if one was obtained, and directing that the fund should be brought into that Court for distribution.

All the parties claiming an interest in the fund, as well as the fund itself, are in a Court of equity, that has ample power to do full justice to them all, and we presume that Court will finally settle the whole of the matter in dispute.

This Court did not intend to overrule the law laid down in *Alexander, et al. vs. Ghiselin, et al.,* 5 *Gill,* 138, that, *in general* the distribution of an insolvent's estate, is made by the permanent trustee, under the direction of the insolvent Court.

But we did not perceive the relevancy of that general rule to the case at bar, as a Court of equity had already assumed jurisdiction over the fund and the claimants to it, and therefore made no reference to it in our former opinion. We only allude to it now because the appellant seems to have supposed that we intended to decide that the fund could be collected without being brought into the Circuit Court.

With this explanation the motion for a re-argument will be overruled.

(Decided 6th January, 1888.)