(Decided 15th March, 1888.)

JOSEPH L. MORTON *vs.* JOHN C. GRAFFLIN.

*Injunction—Equity pleadings—Evidence—Act of 1884, ch. 23, relating to Evidence in the Courts of Baltimore City—Parties—Amendment—Jurisdiction in Equity—Discovery—Attachment of Stock in the hands of a Pledgee—Mortgage—Act of 1868, ch. 471, sec. 199, and Act of 1886, ch. 287—Act of 1880, ch. 28.*

On a bill for an injunction and a receiver it is imperatively necessary that the written documents upon which the relief is prayed, should accompany the bill, or a proper excuse be made for their non-production.

The Act of 1884, ch. 23, applicable to Baltimore City cases, relieves from the necessity of producing in evidence in any Court in the City of Baltimore, a transcript of the record of any cause in any other Baltimore City Court, and allows the production of the docket and record books in evidence, and gives them the same effect as evidence, as transcripts under seal. HELD:

1st. That as evidence such records are undoubtedly admissible; but in a bill for an injunction, where a levy is alleged to have been made, such charges should be made as would show an effectual levy, and at least the proceedings should be so referred to as to make them a part of the bill, and enable them to be easily found.

2nd. That while the omission of such charges and reference would justify the refusal of a preliminary injunction, this and the want of other parties, could be cured by amendment, and if, when amended

Morton *vs.* Grafflin.

in these particulars, a proper case would be made for the intervention of a Court of equity, it would be proper to retain the bill, and allow the amendments to be made.

L. in order to secure the payment of a sum of money which he owed to G. on a bond dated July 5th, 1884, payable three years after date, pledged to him certain shares of stock which he, L., owned in certain foreign corporations, and at the same time (July 5th, 1884,) executed to him a mortgage on certain real estate in New Jersey. On the 5th of November, 1887, M. sued out of the Superior Court of Baltimore City a writ of attachment against L. as a non-resident debtor, and caused it to be laid in the hands of G. as garnishee. On a bill in equity filed by M. in the Circuit Court of Baltimore City against G. and L. for an injunction and a receiver, and a discovery, and asking that G. be required primarily to foreclose his mortgage in New Jersey for the payment of his claim, it was HELD:

1st. That in order to give the attaching Court jurisdiction to condemn and sell the stock, it was necessary to comply with the requirements of the Act of 1868, ch. 471, sec. 199, in regard to the attachment of stock.

2nd. That as the attaching Court by reason of the non-compliance with these requirements acquired no jurisdiction to render judgment, the equity Court had none on the subject.

3rd. That in this case the stock being alleged to be pledged, the provisions of the Act of 1886, ch. 287, prevented the Court from getting any control of it, by attachment, and a Court of equity could not take it away from the *bona fide* pledgee in the face of the statute, and put it in the hands of a receiver, as asked in the bill.

4th. That as under said statute stock which is pledged cannot be described and scheduled, no lien could be acquired by the mere laying of the attachment in the hands of the pledgee.

5th. That a creditor situated as G. was, would not be sent out of the State to enforce his lien, for the purpose of leaving property here on which he had a lien, for the benefit of other creditors who have a lien on the property within the State; and *a fortiori* he would not be required so to do for a creditor who had acquired no lien.

6th. That the plaintiff's claim being wholly unestablished, and it not being claimed that the attachment suit upon it has proceeded any further than the issuance and levy of the writs, and this not being a proceeding to set aside a fraudulent conveyance, the plaintiff was not entitled to the relief prayed.

7th. That the plaintiff having resorted to attachment must perfect his lien by the means the law gives him.

8th. That the Act of 1880, ch. 28, and the other provisions of the attachment law, gave him the right to interrogate the garnishee, and he had no need to resort to a Court of equity for discovery in regard to the state of the accounts between L. and G. And his remedy being a legal one, a Court of equity cannot aid in its administration.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, and IRVING, J.

*George R. Gaither, Jr.,* and *William S. Bryan, Jr.,* for the appellant.

Has the plaintiff by virtue of his attachment proceedings obtained a lien upon the property in the hands of Grafflin? It was expressly decided by this Court in the case of *Thomas vs. Brown and Lowndes,* 67 *Md.,* 512, that the laying of an attachment in the hands of the garnishee, gives the attaching creditor *a lien* upon the property or credits in the hands of the garnishee belonging to the debtor.

In the case at bar, it is stated in the bill that the attachment has been properly laid in the hands of Grafflin, and that the debt for which the attachment was sued out is a *bona fide* debt remaining unpaid. It is, therefore, admitted that the *quasi* lien acquired by the attachment will be rendered absolute by the due process of law.

Shares of stock *or choses in action* at common law could not be sold under execution, and hence the doctrine that they cannot be attached. A mere *chose in action* was not subject to execution in Maryland. *Harding vs. Stevenson,* 6 *Harr. & J.,* 264. Such a distinction *as to attachments*

has not been recognized in Maryland, and could not be under the terms of the statute. Rev. Code, Art. 67, clause IV, sec. 10, says: "*Any kind of property* or credits belonging to the defendant, in the plaintiff's own hands, or in the hands of any one else, may be attached, and credits may be attached which shall not then be due."·

Can anything be broader than the terms of the statute— *any kind of property or credits?* Does it not necessarily include every species of property, whether legal or equitable? It has been expressly decided in this State that equitable interests, which can ordinarily be enforced in a Court of equity, may be attached. *Campbell vs. Morris,* 3 *Harr. & McH.,* 535 ; *Cecil Bank vs. Snively,* 23 *Md.,* 253 ; *O'dend'hal, Garnishee vs. Devlin,* 48 *Md.,* 439.

The right to attach shares of stock has been expressly recognized. *Chesapeake & Ohio R. R. Co. vs. Paine,* 29 *Grattan,* 502 ; *N. E. Maine Ins. Co. vs. Chandler,* 16 *Mass.,* 274, 279 ; *Cooke vs. Hallett,* 119 *Mass.,* 148.

By the attachment proceedings it is shown that the plaintiff, Morton, has exhausted his *legal* remedies to obtain satisfaction. It is stated in the bill "that there are no other assets in the State of Maryland belonging to said Lawton ;" and Lawton being a non-resident, and his whereabouts unknown, it is sufficiently stated in the bill that it is impossible for the plaintiff to obtain a judgment and execution against him. In such cases, Courts of Equity have not hesitated to give relief.

In the case of *Pendleton vs. Perkins,* 49 *Missouri,* 568, the Court says : "It seems thus to be satisfactorily settled upon authority, that when the debtor has absconded, so that no personal judgment can be obtained against him, and there is no statutory proceeding by which his property can be reached, a creditors' bill will lie in the first instance and from the necessity of the case." See *Peay vs. Morrison's Ex's,* 10 *Gratt.,* 149, *and Farrar vs. Haselden,* 9 *Rich. Eq.,* 331.

In *Board of Public Works vs. Columbia College,* 17 *Wallace,* 530, Justice FIELD says : "The jurisdiction of a Court of equity to reach the property of a debtor justly applicable to the payment of his debts, even when there is no specific lien on the property, is undoubted. It is a very ancient jurisdiction, but for its exercise, the debt must be clear and undisputed, and there must exist some special circumstances, requiring the interposition of the Court to obtain possession of, and apply the property." See also *Taylor vs. Jones,* 2 *Atkyn's,* 600 ; *Scott vs. Scholey,* 8 *East,* 467.

" When one creditor may, to obtain satisfaction, have recourse to two funds, and another creditor of the same debtor can only resort to one of them, he who has it in his power to resort to the two funds, may be compelled to obtain satisfaction, as far as he can, out of that fund upon which the other creditors can have no claim, so as to leave the other fund for their satisfaction. The principle upon which this arrangement is made, is not deduced from that which may properly be considered as the contract between debtor and creditor, but is founded on a natural and moral equity, that it shall not depend upon the will or caprice of one creditor who has within his reach a double fund to disappoint another creditor of his satisfaction." *Post vs. Mackall,* 3 *Bland,* 502, 503, 504, 505 ; *Adams on Equity,* 272 (*) note, *and cases cited.*

There can be no controversy about the general proposition that where a creditor has a lien on two properties or funds belonging to a common debtor, either of which is sufficient to satisfy his claim, and a junior lienor has a lien upon one only of these properties or funds, the prior encumbrancer will be compelled to go against the fund on which he alone has a lien. This rule "of common honesty," as Chief Justice GIBSON in *Ramsey's Appeal,* 2 *Watts,* 232, calls it, is established on the principle that a man cannot in justice be allowed so to exercise his own rights, as

wantonly and wilfully to defeat the rights of another. 1 *Story Eq. Jur.*, secs. 559, 560, 633, 642; 1 *Jones on Mortgages*, secs. 1628–9; 1 *Powell on Mortgages, marg. p.* 343; *Woollen vs. Hillen*, 9 *Gill*, 185; *Burger vs. Greif*, 55 *Md.*, 525; *Watson vs. Bane*, 7 *Md.*, 128; *Gen. Ins. Co. vs. U. S. Ins. Co.*, 10 *Md.*, 528; *N. Y. & Jersey Steamboat Co. vs. Jersey Co.*, 1 *Hopk. Ch.*, 460, 470; *Worth vs. Hill*, 14 *Wis.*, 559; *Alston vs. Munford*, 1 *Brock.*, 279; *Swift vs. Conboy*, 12 *Iowa*, 449; *Terry vs. Rosell*, 32 *Ark.*, 478; *Bryant vs. Stephens*, 58 *Ala.*, 641; *Warner vs. De Witt Nat. Bank*, 4 *Bradw.*, (*III,*) 315; *Post vs. Mackall*, 3 *Bland*, 500.

If Grafflin can be compelled to proceed against the New Jersey property, then the demurrer admits that he has property in his hands belonging to Lawton, and on which we have a lien, and in which he has no interest whatever. Under these circumstances, all the authorities show that we can have the money or stocks paid into Court, without alleging either fraud or danger. The law being that a man cannot hold property to which he asserts no claim, when the parties interested desire it to be paid into the registry of the Court. In other words, Grafflin has no right to insist on acting as custodian of Morton's securities. *McKim vs. Thompson*, 1 *Bland*, 156; *Hopkins vs. McElderry*, 4 *Md. Ch. Dec.*, 23; *Dillon vs. Conn. Mut. Life Ins. Co.*, 44 *Md.*, 394; *Alexander's Chan. Prac.*, 96; 2 *Daniel's Chan. Prac.*, 1770.

If the appellee exhausts the only fund we have, he must, say all the authorities, subrogate us to his rights against the fund upon which we have no lien, so far as he can, without loss to himself. *Johns vs. Reardon*, 11 *Md.*, 490; *Adams' Equity*, 272; *Watkins vs. Worthington*, 2 *Bland*, 532; *Alston vs. Munford*, 1 *Brock.*, 279; *Gen. Ins. Co. vs. U. S. Ins. Co.*, 10 *Md.*, 528; *Watson vs. Bane*, 7 *Md.*, 129.

Morton has acquired a lien by virtue of his attachment upon the property in the hands of the garnishee, but the

garnishee claims that he holds the same as security for a debt due to him.   In *People's Bank, Garnishee vs. Shryock,* 48 *Md.,* 427, 435, this Court says :   "The proceeding of attachment in this State is essentially a legal proceeding, and in no way appropriate to ascertain and settle the equitable rights between the garnishee and defendant." There is, moreover, no process under the attachment law by which the property could be sold, and the several encumbrances paid in order of priority.

In *Gaither vs. Clarke,* 67 *Md.,* 18, this Court expressly recognized the right of a junior incumbrancer to obtain a decree for the sale of the property, so that the proceeds might be applied, first to the payment of the prior incumbrancer, and then to the subsequent ones.

*Frank Gosnell,* for the appellee.

As there is no allegation of insolvency, either as to Grafflin or Lawton, nor of "fraud, or imminent danger, if possession should not be taken by the Court," and as "the power of appointment is a delicate one, and to be exercised with great circumspection," and moreover as "it must appear that the claimant has a title to the property, and the Court must be satisfied by affidavit that a receiver is necessary to preserve the property," it cannot be seen how a receiver could have been appointed in this case.    *Blondheim vs. Moore,* 11 *Md.,* 365, 374 ;  *Voshell vs. Hynson,* 26 *Md.,* 81, 92.

And as the plaintiff failed to exhibit with his bill any evidence of Lawton's alleged indebtedness to him, or of the pendency of the alleged attachment proceedings, the Court could not have done otherwise than refuse the injunction.    *Union Bank vs. Poultney,* 8 *Gill & J.,* 325 ; *Nusbaum vs. Stein,* 12 *Md.,* 315 ;  *Mahaney vs. Lazier,* 16 *Md.,* 69 ;  *Height vs. Burr,* 19 *Md.,* 130 ;  *Hankey vs. Abrahams,* 28 *Md.,* 588 ;  *Shoemaker vs. Nat. Bank,* 31 *Md.,* 396 ;  *Mayor, &c., of Balto. vs. Weatherby,.* 52 *Md.,* 450 ; *Miller vs. Balto. Co. Marble Co.,* 52 *Md.,* 645.

"Nor is this defect waived by the demurrer. It (the demurrer,) admits only the truth of the facts stated in the bill, so far as they are relevant and well pleaded."

As this is not a case for the granting of an injunction in any event, the action of the Court below was proper. *Kelly, Piet & Co. vs. Mayor, &c., of Balto.*, 53 *Md.*, 134, 143, 144.

A prayer for general relief cannot entitle the complainant to any relief not warranted by the facts alleged and proved. *Ruppertsburger vs. Clark & Co.*, 53 *Md.*, 402, 406.

The doctrine of marshaling of securities only applies where one creditor has a lien upon two funds, out of either of which he can obtain satisfaction of his claim, and another creditor has a *lien upon one of those funds* only. Now, it is to be observed, that the bill does not aver that the securities in the hands of the appellee, (other than the bond secured by mortgage on lands in New Jersey,) are sufficient to satisfy his claim, which, of itself, is fatal to the application of the rule. The relief prayed is that Grafflin be ordered to foreclose the mortgage, or elect to release the other securities. This is inconsistent with the well established decisions, that the doctrine will never be exercised to the prejudice of the prior lienor, so as to suspend or put in peril his claim, or upon any other terms than giving him entire satisfaction; for in making this arrangement, the Court cannot lessen his security or vary his contract. *Post vs. Mackall*, 3 *Bland*, 486, 492, 500, 517; *Adams on Equity*, 271, 272.

If the parties have not all been brought in before the Court; or if they cannot be brought before it, because of their not having any such privity of interest as will warrant the making of them parties to the same suit; or if the two funds cannot be embraced within the scope of the same suit; and much more so if they be not both of them within the jurisdiction of the Court, it would be utterly imprac-

ticable to make any such arrangement in favor of one set of creditors against another, the security of whose claim may be thus greatly endangered, and the satisfaction of which must necessarily be delayed, and consequently lessened. *Post vs. Mackall*, 3 *Bland*, 515; *Adams on Equity*, 271, 272, (*note* 2); *Lewis, Trustee vs. United States*, 92 *U. S.*, 618, 623; *Denham vs. Williams*, 39 *Georgia*, 312.

The facts here show the garnishee to be creditor of the defendant instead of his debtor, and under such circumstances no *lien* whatever was required, nor do such facts warrant the interposition of a Court of equity. *Deacon vs. Oliver*, 14 *Howard*, 622, 624; 2 *Wade on Atta.*, sec. 407, *p.* 153; *Drake on Atta.*, (*5th Ed.*,) sec. 481; *Moore vs. Gennett*, 2 *Tenn. Ch.*, 375, 379; *Christmas vs. Biddle*, 13 *Pa. St.*, 223, 224.

Nor can stocks in corporations thus be reached by garnishment. *Drake on Attach.*, sec. 244, *p.* 201; 2 *Wade on Att.*, sec. 408, *pp.* 157, 158.

Equity will not lend its aid in the enforcement of any lien thus acquired. *McPherson vs. Snowden*, 19 *Md.*, 199–233; *Sumwalt vs. Tucker*, 34 *Md.*, 92.

The appellant avers he has acquired a *lien* upon the property by his attachment; he does not aver fraud, insolvency, imminent danger, or any other equitable consideration entitling him to any relief in this Court. If, as he alleges, a lien has been thus acquired, the law certainly gives him the right to perfect it in the attachment proceedings, and a Court of equity won't interfere. *Thomas vs. Brown and Lowndes*, 67 *Md.*, 512; *Revised Code, Art.* 67, *secs.* 11, 12, 13, *p.* 674; *Grand Chute vs. Winegar*, 15 *Wall.*, 373.

IRVING, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City, sustaining a demurrer to the appellant's

bill in equity, and the decree afterwards dismissing the bill.

The appellant who is a resident of the city and State of New York, charges, that a certain Walter E. Lawton is indebted to him in the sum of $57,129.70; that Lawton prior to March 15th, 1887, was a resident of Spuytin Duyvil of the State of New York, and is now at some place to the plaintiff unknown, but is not a resident of the State of Maryland, nor within the jurisdiction of Maryland Courts. The bill further charges that the plaintiff has sued out of the Superior Court of Baltimore City, a writ of attachment against Lawton as a non-resident of Maryland for the debt alleged to be due him, and has caused it to be laid in the hands of John C. Grafflin (the appellee,) as garnishee "of all the property, assets and money belonging to Walter E. Lawton;" and avers that the garnishee has in his hands "certain property belonging to the said Walter E. Lawton as follows, to wit: Upwards of four thousand shares of the capital stock of the Navassa Phosphate Company, and upwards of six hundred shares of the Rasin Fertilizer Company, together with other shares of the capital stock of other corporations, and other personal property;" which personal property the plaintiff avers and charges that John C. Grafflin the appellee claims to hold as security for an original debt on bond for one hundred and fifty thousand dollars, which with interest accrued he claims now to amount to over one hundred and sixty thousand dollars. The plaintiff further charges, that the bond of Lawton to Grafflin was executed on the fifth of July, 1884, and was made payable three years after date, with interest from date; and that on the same day a mortgage on certain real estate in Bergen County, New Jersey, was executed and delivered to Grafflin to secure the aforesaid debt; and that this mortgage to Grafflin was not recorded in the office of the clerk of the County of Bergen in the State of New Jersey, until the 18th of

March, 1887, but that Grafflin claims this mortgage to be
a valid and subsisting lien on the property it mortgages;
and that his claim is wholly unsatisfied. The bill then
charges that the land embraced in the mortgage is more
than sufficient to pay " the amount, if any, that may be
due under the said mortgage, and all costs incurred in
foreclosing the said mortgage." The bill also states, that
Lawton has disposed of the equity of redemption in the
New Jersey property so mortgaged to Grafflin, and that
he has received no security for his debt beyond the promis-
sory notes mentioned in the attachment proceedings, and
that there is no other property he could have levied upon
under the attachment.

It then prays, 1st, for an injunction restraining the gar-
nishee from disposing of any of the assets in his hands;
2ndly, for a receiver to take possession of the assets and
property in Grafflin's hands, and to hold the same subject
to the order of the Court; and thirdly that Grafflin be
required to bring into Court the shares of the stock of the
several corporations which he has in his hands, and other
property, that the same may be held by the Court until
Grafflin shall have proved what balance is due him, if any,
or that he may be ordered by the Court to foreclose his
mortgage in New Jersey, " or elect to release the other secu-
rities held by him;" and that the securities attached may be
held until such mortgage proceedings are had and account
of his debt and balance due him is taken, or until he makes
the election asked for; and 4thly, for " such other and further
relief as in equity his case may require." Order of pub-
lication is prayed against Walter E. Lawton, and subpœna
for John C. Grafflin. An order to show cause was issued
against Grafflin who appeared and demurred to the bill.

The demurrer is to the whole bill, and for grounds of
demurrer the appellee insists that such case is not made
by the bill as entitles the plaintiff to the relief sought,
and that he has complete remedy at law.

It is hardly necessary, at this day, to cite authorities for the statement that only facts well pleaded are admitted by the demurrer. *Miller vs. Balto. County Marble Company*, 52 *Md.*, 643. As this was a bill for injunction and receiver, it was imperatively necessary, that the written documents upon which the relief was prayed should have accompanied the bill, or proper excuse be made for their non-production. No copy of the New Jersey mortgage was filed with the bill, and no evidence of the plaintiff's demand against Lawton. It is incidentally stated, that there are promissory notes for the indebtedness which are filed in the attachment proceedings; but the attachment proceedings, (or copies of them,) are not made part of the bill, nor are the proceedings so referred to as to make them part of the bill. Reliance, in this particular, is placed on the Act of 1884, ch. 23, as applicable to Baltimore City cases. This Act relieves from the necessity of producing a transcript of the record of any other Baltimore City Court in evidence, and allows the production of the docket and record books as evidence, and gives them the same effect as evidence as transcripts under seal. As evidence such records are undoubtedly admissible; but in a bill for injunction, such charges should be made as showed an effectual levy to have been made, and at least the proceedings should have been so referred to as to make them a part of the bill, and enable them to be easily found. Whilst these defects would justify refusal of preliminary injunction, they and the want of other parties, could be cured by amendment, and if when amended in these particulars a proper case would have been made for the intervention of a Court of equity, it would have been proper to retain the bill and allow the amendments to be made.

The theory of the appellant is, that by his attachment and levy thereunder, he has acquired a lien on the stocks of his debtor, in the hands of the garnishee, subject to the

garnishee's prior lien, which is set out; but that he cannot make his lien available without the aid of a Court of equity. He claims that the principle established in *Alcock vs. Harris*, 10 *G. & J.*, 226, applies. He relies on 11th sec. of Art. 10 of the Code, which says " any kind of property or credits of the defendant in the plaintiff's own hands, or in the hands of any one else, may be attached," in connection with the Act of 1868, ch. 471, sec. 198, which will be considered presently.

Section 199, of 1868, directs how such attachment shall be executed, and requires the sheriff to leave with the president or other chief officer of the corporation, or leave at their place of business, a statement in writing of this levy on the stock of the defendant, and the purpose for which it is made, and the officer making the service is required to return a copy of such notice with his writ.

Upon such notice the corporation is required upon demand of the sheriff to furnish him with the number of the shares and amount of stock standing in the defendant's name on the books of the corporation; and the refusal of the corporation to comply is made punishable. The corporations being the debtors for the stock standing in stockholders' names, the law provides for their notification. They are in fact intended to be parties defendant. So far as this bill discloses, none of these legal requirements were complied with; nor are the corporations made defendants as was necessary, if the Court acquired any jurisdiction by virtue of the attachment, to condemn the stock by its judgment and thereby render it liable to sale. And if the attaching Court did not get jurisdiction to render judgment, the Chancery Court would have none on the subject.

If the levy was made in accordance with the provisions of the statute, and the corporations were notified, then these defects in the allegations of the bill, and the want of proper and necessary parties could be cured by amend-

ment, if the law allows pledged stock, as this is, to be the subject of attachment. Section 198, of the Act of 1868, ch. 471, makes the interest of a defendant in the capital stock of a corporation, the subject of execution or attachment *only* when the writ issues by way of execution on *a judgment or decree;* but it was contended by appellant's counsel, that section 11, of Art. 10, of the Code is broad enough to embrace an attachment upon original process such as this is. Whether such would be a proper construction of the law is immaterial, as the Act of 1886, ch. 287, repealing, amending and enacting in new form section 198, expressly includes "proceedings by attachment on original process." This Act of 1886, was not alluded to in the argument or in the briefs of counsel, but was overlooked, and attention has been called to it since. As its provisions must exercise a controlling effect upon this decision, we quote the proviso which has been added, after including attachments on original process with judgments and decrees:

"Provided, that all executions or attachments levied or laid upon the shares or interest of any defendant in the capital, joint stock, or debts of a corporation standing on its books in his name, shall only affect the interest which such *defendant* had in such capital, joint stock, or debts at the time of levying such execution or attachment, and shall not in any way affect the right, title or interest acquired by any *bona fide* purchaser or pledgee for value to or in the capital, joint stock or debts of such corporation standing on its books in the name of such defendant, by a sale or pledge thereof by such defendant by a delivery of the certificate representing such capital, joint stock or debts, with a power of attorney to transfer the same made prior to the levying of such execution or attachment, and that nothing contained in the succeeding sections of this Act shall be construed to apply to any such capital, joint stock or debts so sold or pledged, or to prohibit or prevent any such corporation or purchaser or pledgee from trans-

Morton *vs.* Grafflin.

ferring the said capital, joint stock or debts represented by such certificate upon the books of the corporation, in the same manner and to the same effect as if no such execution or attachment had been levied."

The object of this proviso is very obvious.   It intended to enable, and does enable, the corporation to make an effectual transfer on its books of the stock held by a *bona fide* pledgee notwithstanding the attachment.   It evidently contemplates that the levy is to be made in their hands *as the debtor* for the stock, and to protect the corporation from liability because of the same, if the same has been *bona fide* sold or pledged before the attachment laid; for in such case it expressly authorizes the completion of the transfer on the corporation books "in the same manner and to the same effect as if no attachment had been laid." In such case, clearly there could be no judgment against the corporation, and the plaintiff in such attachment must fail in his suit.

The object of the attachment is to *condemn* the *property* and subject it to sale.   Where a credit is attached the judgment becomes a personal judgment against the garnishee owing the debt, and such judgment is a credit to him *pro tanto* as against his creditor; but where the condemnation is of the property the judgment is *in rem*, and it is sold.   In this case the stock being alleged to be pledged, cannot, under the statute, be condemned, unless it is held in fraud, which is not alleged.   In such case neither corporation nor pledgee is restrained by the attachment from transferring the same.   The Court by the attachment gets no control over the stock, and if the attaching Court does not, a Court of equity cannot take it away from the *bona fide* pledgee in the face of the statute and put it in the hands of a receiver, as is asked by the bill.   As a rule of law, *Drake on Attachment, sec.* 244, says:   Stock in a corporation is not attachable except by express statute; and that when the statute allows it, the authority only extends to cor-

porations existing in the State, and not to stock of those outside the State—manifestly for the reason the corporation is the debtor.   In this case it is not alleged that these corporations whose stock is sought to be reached are resident corporations.    In all cases when allowed by statute its provisions must be substantially followed.   2 *Wade an Attachment, sec.* 408.   It is hard to perceive how a lien has been acquired by the levy which is alleged. In *Moore & Co. vs. Gennett & Co.,* 2 *Tenn. Ch.,* 375, in a very analogous case, it was held that no lien was acquired.

This section, 198, as it now stands, says expressly that "nothing contained in the succeeding sections of this Act shall be construed to apply to any such capital, joint stock or debts so sold or pledged."   The succeeding sections regulate the method of the sheriff's making the levy, giving the notice thereof, and procuring the data from which to make the schedule that he is to return to the Court.    Thus, in the case of an attachment ordered against stock *bona fide* pledged, the very means of making an effectual levy is taken away by declaring the sections relating thereto shall not be construed to apply.   As the stock therefore cannot be described and scheduled, it must follow that no lien can be acquired by the simple laying the same in the hands of a pledgee, who is not the simple custodian of it, but holds it for the payment of his debt due from the owner of it.

In this case there is no allegation or contention that the stock sought to be attached is more than enough to satisfy Grafflin's claim and lien thereon.   So that there is no interest of Lawton that could be affected, except his equity of redemption, and what that is it is impossible to know, from the impossibility of getting a schedule of the same.   It is said in *Adams on Equity, page* 271, that the only remedy of a subsequent lien-holder as against one who is paramount, is to redeem and tack it to his debt— because the junior incumbrancer has no claim or equity

against the paramount incumbrancer. No proffer to redeem is alleged, but the prayer is that Grafflin may be compelled to foreclose the New Jersey mortgage or elect between it and the property in his hands as additional security. The case of *Post vs. Mackall,* 3 *Bland,* 515, clearly decides that a creditor situated as Grafflin will not be sent out of the State to enforce a lien for the purpose of leaving property here on which he has a lien, for the benefit of other creditors who have a lien on the property within the State. And if it will not do it for creditors who have a lien, *a fortiori,* it will not do so for a creditor who has acquired no lien. The doctrine of *Post vs. Mackall* has also been maintained in *Denham vs. Williams,* 39 *Ga.,* 319, and *Lewis, Trustee vs. U. S.,* 92 *U. S.,* 618. In *Post vs. Mackall,* 3 *Bl.,* the Chancellor says, "if the two funds cannot be embraced within the scope of the same suit; and much more so, if they be not both of them within the jurisdiction of the Court, it would be impracticable to make any such arrangement in favor of any one set of creditors against another, whose claim may be thus greatly endangered, and the satisfaction of which must necessarily be delayed and consequently lessened." The Chancellor cites numerous authorities, and many more might be added. We refer to 2 *White & Tudor's Lead. C.,* 259 *and* 321, *(Aldrich vs. Cooper,)* and also to *Adams on Equity,* 272, note, and *Emmons vs. Bradley,* 56 *Maine,* 338. In this last case it was held that equity would not compel a secured creditor to elect that which is least available and convenient to him in favor of others who are not secured. That is precisely what this appellant is seeking to have done. In *White & Tudor,* above cited, page 259, it is said that the right of the paramount creditor is so far absolute as to both funds that he should not be delayed or hindered in any step requisite for him ; and on page 321 it is said the fund to which he is referred must be shown to be reachable without litigation or delay ; and the *burden of so estab-*

*lishing* is on the creditor asking a marshalling. This bill does not even *aver* the mortgage in New Jersey is a good one and available. It only charges that the *appellee claims* it to be good. The plaintiff therefore does not in his bill assume the discharge of the burden which the authorities say is on him; whilst he states facts respecting the record of the mortgage that would be fatal in this State, as against subsequent mortgagees who did record sooner, and for aught that appears it may be so in New Jersey. At any rate contest and delay are not unlikely.

It is said in *Public Works vs. Columbia College,* 17 *Wallace,* 530, that "the jurisdiction of a Court of equity to reach the property of a debtor justly applicable to the payment of his debts, even where there is no *specific* lien, is undoubted. It is a very ancient jurisdiction, but for its exercise the debt must be clear and undisputed, and there must exist some special circumstances, requiring the interposition of the Court to obtain possession of and apply the property." In the same case, and further on in the opinion, Justice FIELD says, moreover, that "unless the suit relate to a deceased person's estate, the debt must be established by some judicial proceeding, and it must generally be shown that the legal means for its collection have been exhausted." This appellant's claim is wholly unestablished, and it is not claimed that the attachment suit upon it has proceeded further than the issuance and levy of the writ. Prior to the passage of the Act of 1835, chapter 380, which gives section 35 to Article 16 of the Code, it was uniformly held in this State that a creditor who pursues property in equity which has been fraudulently conveyed away, must first obtain judgment against his debtor, before he would have standing in a Court of equity; and if he pursued personal property a *fi. fa.* must have first issued. *Birely and Holtz vs. Staley,* 5 *Gill & J.,* 433; *Griffith vs. Frederick Co. Bank,* 6 *Gill & J.,* 444; *Wanamaker vs. Bowes,* 36 *Md.,* 56; *Swan vs. Dent,* 2 *Md. Ch. Dec.,* 117. In *Brinker-*

*hoff vs. Brown*, 4 *Johns. Ch. Rep.*, 677, Chancellor KENT says, if he seeks aid of equity as to real estate he must show a judgment, and if personal estate he must show execution giving legal preference. For the purpose of attacking a fraudulent conveyance the 35th section of Article 16 gives the right to a non-judgment creditor to file a bill in his own behalf and in behalf of other creditors; but if the pleadings do not admit the indebtedness, the Court may, on application of the parties, or either of them, send the case to a Court of law on issues to try the fact of indebtedness *vel non*, subject to the usual chancery rules for such cases.

The statute removes the disability of non-judgment creditors to sue in a Court of equity to subject a debtor's property, fraudulently conveyed away, to the payment of his debts; but leaves the law in all other cases wholly unaffected; so that the decisions of our own Court, applicable to cases other than such as seek to set aside fraudulent conveyances, are as authoritative as ever. The appellant contends that, although he has no judgment, he has acquired a lien by virtue of his attachment which gives him a standing in equity. If he has no such lien, it is clear, he is without standing in Court. A judgment is a lien on land only because the land can be taken in execution and sold. An execution is a lien on personal property only because the personal property can be sold in satisfaction of the execution. *Eschbach vs. Pitts*, 6 *Md.*, 71; *Hanson vs. Barnes*, 3 *Gill & J.*, 359. If there be a judgment, and execution on it be levied as an equitable interest, a Court of equity will aid in making the execution effective. *Harris vs. Alcock*, 10 *Gill & J.*, 226. Here an equitable interest— an equity of redemption—is sought to be reached through an attachment before judgment of condemnation, and a Court of equity is asked to aid in perfecting the remedy sought by this special and extraordinary writ, which all the authorities say must be specially and strictly framed in

order to be sustained and made effective. When an attachment writ is actually levied and the property seized by the sheriff, an *inchoate lien* is acquired by the levy—but it is *only inchoate*, and must be perfected by a *judgment*. *Rhodes & Williams vs. Amsinck & Co.*, 38 *Md.*, 345, and *Cooke, Garn. vs. Cooke*, 43 *Md.*, 522. A lien is acquired because the property seized may be condemned, and then sold on execution. It cannot be sold until there is such judgment of condemnation, unless ordered by the Court because property is perishable. A seizure must be made. *Drake on Att., secs.* 255, 255*a and* 256. We have already seen that so far as the stocks alleged to have been attached, and which are alleged to be pledged, and for aught that the bill charges, are *bona fide* held in pledge, he has not acquired a lien, for they are protected from being affected by the attachment. Has he acquired a lien by virtue of the attachment on any thing else? He avers there is "other property" in the hands of the garnishee—the appellee—what that is he does not allege. It is not described in the bill, and it is not averred that the sheriff has scheduled it, or given any description of it. It is only alleged that the attachment is "laid in the hands" of the garnishee. That would be sufficient to support a judgment for credits; that is, for what Grafflin owed Mr. Lawton. But he is not Lawton's debtor. Lawton is admitted to be his debtor, and anything in Grafflin's hands is there in pledge for debt. Supposing Grafflin to be the debtor of Lawton for any excess of the value of the property in Grafflin's hands after paying Grafflin's claim, and this attachment of appellant binds it, having resorted to attachment he must perfect his lien by the means the law gives him. The *onus* is on the plaintiff to show not only the amount of his claim, but the value of the property in the garnishee's hands, and he may not take more than enough for the purpose of meeting his claim and costs. The Act of 1880, ch. 28, expressly so provides. This Act and the

Morton *vs.* Grafflin.

other provisions of the attachment law give him the right to interrogate the garnishee, and he had no need to resort to a Court of equity for discovery on the subject, if it were competent for equity to aid in perfecting his legal remedy. An *inchoate* and unperfected lien is sought to be made the basis of equitable interference for the purpose of perfecting that which can only be done at law; and if the law has failed to make adequate provision for accomplishing it, an equity Court cannot supply it. It was so decided by this Court in *McPherson vs. Snowden,* 19 *Md.,* 199. If he had filed his interrogatories and the garnishee had failed to answer them, the Act of 1880, ch. 28, provides for judgment against the garnishee. Appellant does not seem to have resorted to his legal rights in this regard. But the appellant contends that he avers the garnishee has "other property" in his hands, and that having laid the attachment on it he has acquired a *lien on it,* whatever that is, and that supports his prayer for discovery in equity. This, we think, is unsound. If the property is to be condemned, it must be scheduled by the sheriff; or, if he is not permitted to seize it actually and so returns, then it may be discovered and reached by interrogatories to the garnishee. It is only that which is seized and scheduled, and so returned by the sheriff; or that which is disclosed by interrogatories so that it may be taken, that can be condemned. Only the specific thing can be condemned. This levy to affect a specific thing was too vague. There is nothing described. If through that levy it was designed to make that levy the basis of a judgment *in personam,* under the Act of 1880, ch. 28, then to secure such judgment the means supplied by the Act of 1880, must be pursued to procure such judgment. Under it he could put interrogatories, and if not answered, and plaintiff could show the value of the property he could get his judgment. The remedy is a legal one and a Court of equity cannot aid in its administration. Being an extraordinary and special

remedy it must be strictly pursued, and · the case must stand or fall accordingly.

In argument and in his brief the appellant relies on his having filed what he calls a creditors' bill against an absconding debtor; and that this gives him standing in Court. He has cited numerous authorities in support of this contention, which we do not think applicable to this case, and the law as we understand it to obtain in this State, where fraud is not alleged., His debtor is a non-resident. His attachment proceeds against the debtor as a non-resident, and not as an absconding debtor. The bill does not aver him to be an absconding debtor even from New York State, of which he is averred to be a citizen and resident. It only charges that he does not know where he is, and asks publication against him. The bill is not a general creditors' bill seeking to set aside the assignment to Grafflin for fraud therein, for the purpose of subjecting the property to creditors generally; but is an effort to subject the property to plaintiff's own claim through the virtue of a supposed lien acquired by the attachment he sets out as having been laid in Grafflin's hands.

In anything we have said we do not mean to be understood as impugning in the slightest degree the doctrine that property out of the jurisdiction may be reached through the conscience of a defendant who is served with process in equity; nor the other principle that property within the jurisdiction may, in a proper case, be reached through a Court of equity, though the owner may be out of the jurisdiction. We only mean to decide that the appellant has not brought his case within the proper application of either principle for a Court of equity to interfere ; and if the formal defects as to additional parties and exhibits had not existed, the bill would have been properly dismissed.

*Decree affirmed.*

(Decided 15th March, 1888.)

On the 29th of March, 1888, a motion was made for a re-argument of the foregoing case, and also for a modification of the decree therein. The motions were overruled, and Judge IRVING delivered the following opinion of the Court :

We have carefully considered the very strong argument of counsel for appellant and the authorities cited, but have been able to find no ground for a re-argument of the case or modification of our decree. As fully and as clearly as we could, we expressed our views as to the matters involved in the appeal. We decided that stocks of a corporation *bona fide* pledged for debt, were not, under our statute, attachable ; and that no lien had been acquired upon the stocks alleged to have been attached. We adhere to that view. We also decided that the lien alleged to have been acquired by the attachment on any property of the debtor, mortgaged or pledged to appellee other than stocks, was but an *inchoate* lien which needed perfecting in a Court of law before resort could be had to equity to secure a sale by way of execution. We cited *McPherson vs. Snowden*, 19 *Md.*, 197, as so expressly deciding. The remedy by attachment being special and extraordinary, it must be specially pursued ; and equity cannot aid the law in that regard. We see no conflict between *Thomas vs. Brown & Lowndes*, 67 *Md.*, 512, and *Rhodes vs. Amsinck*, 38 *Md.*, 345 ; on the contrary the case of *Thomas vs. Brown & Lowndes*, clearly recognizes the lien acquired by the levy as *inchoate* and needing perfection by judgment of condemnation to be available. From the argument of counsel we may infer that the other property claimed to be attached consists of *"choses in action"* of Lawton pledged to Grafflin. If that be so, then the Court below was clearly right in holding they could only be reached *as credits* through the debtor who had them to pay, and not through Grafflin alone as pledgee and custodian. They are not attachable as chattels. If it was chattel property, and Grafflin owed

Lawton for it, of course, under the return "laid in the hands," the appellant could show what it was Grafflin owed him for. In *Odend'hal vs. Devlin*, 48 *Md.*, 440, cited by appellant, that was the case. The husband owed the wife for property he had taken of hers with agreement to pay for it; what that property was the evidence showed, and judgment *in personam* for its value as proven, was rendered against the husband. Condemnation of specific property was not sought or obtained. Considered in the light of what was sought and obtained, it is clear certain expressions were not intended to sanction the return in that case as a sufficient one for the condemnation of specific chattels. There is, we think, no inconsistency between that case and what we have said is necessary, if the *specific thing* is to be condemned and sold. Here only an equity of redemption in certain property is alleged to have been attached. If it be chattel property, the same being lawfully and *bona fide* in the hands of another and cannot be taken from his possession, and if the sheriff cannot schedule and describe it, for lack of knowledge, of course the plaintiff has his right to interrogate the garnishee and thus get such a description of the property into the record, so that the judgment of condemnation of the equitable interest may be definite and certain. When the appellant has secured such condemnation of such equitable interest he will be in position to claim the aid of equity to make it available, but not before.

> *The motion for re-argument and*
> *for modification of the decree*
> *must be overruled.*

(Decided 14th June, 1888.)