·LOUIS ELIE JOSEPH HENRI de GALARD de BRAS-
SAC de BEARN, COUNT AND PRINCE OF
BEARN AND CHALAIS, *vs.* ROSS R. WINANS
and FERDINAND C. LATROBE, Trustees, et
al. BERNARD CARTER *vs.* ROSS R. WI-
NANS and FERDINAND C. LATROBE,
Trustees et al.

*Appeals; reversal of decree in equity; direction for further pro-
ceedings; modification of decree by Court below. Parties
in equity. Trust funds; in course of distribution;
creditors' rights; judicial comity. Solicitors'
fees. Certificate of members of the Bar.*

On a former appeal from a Court of equity the Court of
Appeals had held that B. was entitled to have set aside a
distribution made by the Orphans' Court, and to have can-
celled certain releases executed by him, and that there should
be given over to him absolutely in his own right two-thirds of
a trust fund which had been awarded to his children; the
cause had been remanded accordingly for such further pro-
ceedings; pending such proceedings the bonds of which the
estate consisted were attached by creditors of B., who inter-
vened in the equity proceedings and prayed that no order be
passed permitting said delivery of the trust funds while the
trust estate continued, or permitting their removal from the
Court's jurisdiction, until the determination of the attach-
ments; the trial Court added to the terms of the decree of the
Court of Appeals a provision to the effect, that, "pending
the determination of said attachment cases * * * all of said
bonds shall remain as and where they now are until the fur-
ther order of this Court; this action to be without prejudice
to the rights of said attaching creditors or of the plaintiff in
this case." *Held,* that there was no error in the order of the
Circuit Court directing the bonds to be kept "where" they

were pending the settlement of the attachments; but there was error in ordering them kept "as they now are", without in some manner providing that the registration of the bonds in the infants' names should be cancelled; since, under the former decree remanding the cause, B. was entitled to a clear and unfettered title to the bonds whenever delivered, and the failure of the decree of the trial Court so to provide required its reversal.      p. 151

The decree in the further proceeding should have provided for the cancellation of the registration of the bonds in the infants' names, in a way not to affect the rights of any of the parties to the attachment suits then pending, or to any other such suits that might have since been filed.      p. 151

Where a previous order making a party a defendant to a cause is annulled his rights can not be determined by any decree passed in the case.      p. 146

Where the order of a Court of equity setting aside a distribution of funds made by the Orphans' Court directed the funds to be paid over to the complainant, it was *held,* that such order did not exempt the property from liability for any legally established claim, nor did it aid the complainant in any way to withdraw the property from the reach of creditors.      p. 147

Judicial comity should always be carefully observed to avoid conflict of jurisdiction.      p. 151

He who seeks equity must do equity.      p. 153

Where in former proceedings a fee would properly have been provided for out of the fund, for counsel representing the interests of the infant defendants, it was *held,* that although no fee had been then applied for, nor any provision made for the same, in the decree of the Court of Appeals remanding the cause for further proceedings, yet the authority of the Circuit Court to allow a counsel fee was unaffected by a decree of the Court of Appeals, silent on the subject.      p 153

A solicitor had represented the interest of the infant defendants in a large estate; leading members of the Bar had certified that his fee should be at least $4,000.00; he prayed that

only $3,000.00 be allowed; subsequently he petitioned that his fee be allowed according to the original certificate; it appeared that he had agreed his fee should not exceed $3,000.00, provided it be allowed out of the fund and that all exceptions to such allowance be dismissed and no appeal taken; and since his right to a fee from the fund had been resisted and the order of the Court allowing the same appealed from, he prayed that the full fee be allowed. *Held,* that the action of the Circuit Court in allowing the said fee of $4,000.00 was proper. p. 155

The Court of Appeals, in reviewing the compensation allowed to an attorney, must assume that members of the Bar, in certifying what would be a reasonable fee, exercised real and conscientious judgment. p. 155

*Decided April 5th, 1911.*

Appeals from Circuit Court No. 2, of Baltimore City (SHARP, J.).

These appeals were argued together before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, THOMAS, PATTISON and URNER, JJ.

*Maurice Leon,* for the appellees, on appeal of Bernard the Prince de Bearn.

*John E. Semmes* submitted a brief for the appellees.

*Bernard Carter, in propria persona,* on his appeal.

*Maurice Leon,* for the appellees, on appeal of Bernard Carter.

*J. Kemp Bartlett* (with whom were *L. B. Keene Claggett* and *R. Howard Bland,* on the brief), for Francis de Bearn, Pierre de Bearn, Odon de Bearn and Jean Baptiste Chaumet, intervenors by petition in the Court below, appellees.

PEARCE, J., delivered the opinion of the Court.

The two appeals which are embraced in this Record were both taken from the decree of Circuit Court No. 2, of Baltimore City, which was passed in pursuance of, and for the purpose of carrying into execution, the decree of this Court passed December 3rd, 1909, in the case of *Prince de Bearn* v. *Winans and Latrobe, trustees, et al.,* reported in 111th Md. 434 to 480. By that decree, a former decree of Circuit Court No. 2, of Baltimore City, was reversed, this Court holding in the opinion filed, that Prince de Bearn was entitled to a decree setting aside the distribution of the fund then in controversy, made by the Orphans' Court of Baltimore City, and cancelling the releases which had been given by the Prince in his own right, and as guardian for his two infant children, to the said Winans and Latrobe, as trustees, and as administrators *c. t. a.* of the deceased wife of the Prince, and that he was further entitled to have the two-thirds of the trust fund which was distributed to his two said children awarded and paid over to him absolutely, and to hold the same in his own right; and a decree was accordingly passed remanding the cause for further proceedings in conformity with the views expressed in said opinion.

During the pendency of the original proceedings in the lower Court, and under an order of that Court, the guardian *ad litem* of the two infant children of the Prince employed Messrs. Bernard Carter and John E. Semmes to protect the interest of said infants, and these gentlemen filed answers for said infants. But as Mr. Semmes already represented the trustees and administrators, he thereafter acted for them only, and Mr. Carter alone represented the infants, and argued the case in their behalf both in the lower Court and in this Court. No application was made by Mr. Carter for the allowance of a fee for his said services until after the case was remanded to the Circuit Court, but subsequent thereto such application was made in said Court, and a fee of $3,000 was allowed by order of the Court subject to the usual exceptions upon the auditor's report and account. The

Prince excepted to the allowance of any fee to Mr. Carter out of any portion of the fund, and Mr. Carter excepted to the refusal óf the Court to allow him $4,000, which was the amount he claimed as a reasonable fee, and to the refusal of the Court to allow him more than $3,000, but both exceptions were overruled, and the auditor's account so far as related to the allowance of said fee of $3,000 was ratified by the decree of June 6, 1910. Mr. Carter has appealed from that decree in so far as the Court thereby refused to allow him $4,000, or to allow more than $3,000 for his said services, and the Prince has appealed from the whole of said decree.

On December 28th, 1909, Francis de Bearn, Pierre de Bearn and Odon de Bearn, all brothers of the Prince, filed a joint petition asking leave to intervene in the case as attaching creditors of the Prince against certain securities, the title and ownership to which they alleged to be involved in the case, and leave being granted they filed such petition alleging that the Prince was indebted to Pierre de Bearn in the sum of $5,460, with accrued interest; to Francois de Bearn in the sum of $7,384.80, with accrued interest; and to Odom de Bearn in the sum of $20,951.50, with accrued interest; that non-resident attachments on these respective claims had been issued out of the Superior Court of Baltimore City, the Prince being a resident of the Republic of France, and that these attachments had been laid in the hands of the American Bonding Company, a corporation of the State of Maryland, with its principal office in the City of Baltimore; also in the hands of the several persons named as constituting the members of the firm of Alexander Brown & Sons, of Baltimore City; that when said attachments were so laid, said American Bonding Co. and said Alexander Brown & Sons had in their joint custody and control, bonds of the New York Central and Hudson River Railroad of the value of $29,000, and bonds of the Chicago, St. Paul, Minneapolis and Omaha Railroad of the value of $156,000, which bonds were registered in the names of the two said infant

children of the Prince, and were deposited in a safe deposit box in the vault of the Safe Deposit and Trust Co., of Baltimore City, rented by and in the names of the said American Bonding Co. and the Alexander Brown & Sons, so as to preserve their said joint custody and control; that since said bonds had been so registered they had been by this Court adjudged to be the absolute property of the Prince, and they were credibly informed that the Prince was about to apply to that Court for a decree, directing, among other things, that said bonding company, its officers and agents, and any other corporations or partnerships having possession of said bonds, forthwith to deliver all of them up to him or to his attorney in fact upon presentation of a copy of such decree; and that the clerk of said Court should upon presentation of said bonds to him, make such endorsement upon them, or execute such separate instrument relating to them as might be necessary to effect their transfer upon the books of the corporations in which they are registered, from said infants to said Prince. The petition then charged that such an order or decree would be a violation of the rights of the petitioners and of the lien which they claimed to have acquired by their said attachments, and prayed that no order be made directing or permitting the delivery of said bonds to the Prince, or their removal out of the jurisdiction of that Court until the trial and final determination of said attachments.

On January 29th, 1910, a similar petition was filed by Jean Baptiste Chaumet, who had issued an attachment out of the said Superior Court of Baltimore City upon an alleged indebtedness of the Prince to him in the sum of $20,076.70.

On February 4th, 1910, the Prince united with the four above-named attaching creditors in a petition, alleging that all parties to said attachments had agreed among themselves "with respect to the amount of the respective claims which constitute the causes of action in said suits, and the said indebtedness shall be discharged by means of the sale of certain bonds hereinafter mentioned", and praying that the

American Bonding Company and Alexander Brown & Sons, and said four attaching creditors be made parties to the cause; and that subpœnas be directed to said American Bonding Company and to said Alexander Brown & Sons, and that they be directed to bring said bonds into Court to be distributed as should be decreed, and on the same day an order was passed as prayed.

The American Bonding Company and Alexander Brown & Sons, as garnishees of Prince de Bearn had already filed pleas in the Superior Court acknowledging custody and control of said bonds as alleged, and setting out fully the circumstances under which they received and accepted such custody and control, in pursuance of the distribution of said trust fund made by the Orphans' Court of Baltimore City, as hereinbefore stated; and later also they filed answers in the said Circuit Court No. 2, in response to said subpœnas, setting out fully the proceedings in said attachments and the terms and conditions under which they held said bonds.

On May 9th, 1909, Prince de Bearn filed a petition alleging that the petition of himself and said four attaching creditors of February 4th, 1910, was filed while he was in Peking, China, as secretary of the French Legation in that city; that it was subscribed by Mr. Leon, as his attorney, without previous conference or correspondence with him, and in ignorance of certain defenses which he was prepared to urge against said attachments; that his said attorney had been in conference with the attorneys of said attaching creditors with a view to a settlement upon terms which were to be cabled to him, but no final agreement was ever reached; and because of such failure he desired to withdraw said petition and have the order passed thereon vacated. On the same day an order *nisi* was passed on said last-mentioned petition, and the attaching creditors not objecting, no cause was shown why the order prayed should not be passed, and on May 21st, 1910, an order was passed dismissing said petition and revoking and annulling the order previously passed thereon.

On June 4th, 1910, the Prince de Bearn filed a petition that a final order and decree should be passed in accordance with the mandate of the Court of Appeals of Maryland in the form annexed to said petition and made a part thereof.

One of the paragraphs of the draft presented, after reciting that the proceedings in the Orphans' Court had been held illegal and void, declared "that the American Bonding Company and Alexander Brown & Sons had ceased to have, with respect to the property constituting said deposit, any right of access, or indeed any right whatever." This paragraph was omitted in the decree passed, and in its place was substituted the following: "And it appearing from the answer of the American Bonding Company that before it agreed to become surety upon the aforesaid guardian bond, it required as a condition precedent that the deposit of the bonds mentioned in the letter of October 28th, 1908, should be made as therein set forth." In considering the propriety of this substitution, it must be noted that the Prince in that letter of October 28th, 1908, to Alexander Brown & Sons, incorporated by him in the draft of decree presented to the Court by his counsel, and incorporated also in the decree passed, expressly declared that he had agreed with the American Bonding Company that the bonds so deposited should not be removed by either without the written consent of the other, to which removal the said bonding company not only had not consented, but in its answer expressly asserted the right to retain possession thereof until the final disposition of said attachment suits; and, as said bonding company was no longer a party to the cause, because of the order of May 9th, 1909, annulling the previous order making it a party, it must be remembered that its rights could not be determined by any decree passed in the cause, and for that reason we think this substitution was a proper one.

By another paragraph of said draft, the clerk of the Court was to be directed to make and execute such instruments relating to each of said bonds as should be requisite to effect the transfer of the registration of said bonds from the said

infants to bearer, *"and to deliver such bonds to the plaintiff or to Maurice Leon, his attorney in fact,* under a power of attorney, of which a duly certified copy was to be filed in the case, subject to a provision for holding certain bonds, five in number, pending the appeal of Mr. Carter," and for the protection of some other small items allowed in the auditor's account and to which the Prince had excepted. This paragraph was omitted in the decree passed, *and in so far as it related to the delivery of said bonds* it was properly omitted for reasons which will now be stated.

We shall advert later to that part of the paragraph which relates to the cancellation of the registration of said bonds in the names of the infant children.

This Court, in the opinion in 111 *Md.,* declared the absolute right of *property* in these bonds to be in the Prince, but did not direct *when* they should be restored to him. At the time that opinion was written, and the decree made thereon, the state of facts with which the Circuit Court had to deal when the decree now appealed from was passed had not arisen. If they had existed, and had been before this Court when its decree was passed, no one can say whether this Court would or would not have qualified the language of the opinion in speaking of his right to have the bonds "restored to him" by adding, as the Circuit Court did in the decree appealed from, the words "at the proper time," and that decree is not to be denounced upon that ground. It left the Prince free to assert his right of *property,* it declared, in said bonds by any available method in law or equity, and it was not intended by anything said in the opinion of this Court to exempt that property from liability for any legally established claims, or to aid the Prince in any way in withdrawing that property from the reach of creditors, or in violating any agreement he had entered into with respect to the custody of that property.

In the decree appealed from, and immediately following the paragraph which declared these registered bonds to be

the absolute property of the Prince, there was inserted the following paragraph:

"Whereas it appears from the proceedings in this case, that certain attachments have been issued out of the Superior Court of Baltimore City by persons claiming to be creditors of the plaintiff, and laid in the hands of the American Bonding Company, Alexander Brown and Sons, and the Safe Deposit and Trust Company of Baltimore City which attachments are still pending in said Superior Court of Baltimore City, this Court will not, pending the determination of said attachment cases, order the delivery of any of the said bonds to the plaintiff; but all of said bonds shall remain as and where they now are until the further order of this Court; this action of this Court to be without prejudice to the rights of said attaching creditors, or of the plaintiff in this case," and it is upon this clause of the decree that the principal and important question in the case arises.

It was contended by counsel for the appellant that this case falls within the decision made in *Morton* v. *Grafflin,* 68 Md. 545, in which it was held that though an attaching creditor acquires a lien upon the property attached under the writ, it is an inchoate lien only, which must be perfected in a Court of law, and that his remedy for that purpose being a legal one, a Court of Equity can not aid in its administration; but we are of opinion that the case before us is not governed by the case of *Morton* v. *Grafflin.*

In that case, Morton laid the writ of attachment in the hands of Grafflin as garnishee of Lawton to reach certain shares of stock and other personal property in possession of Grafflin and pledged to him to secure an indebtedness of Lawton. Morton then filed a bill in equity against Grafflin praying for an injunction to restrain Grafflin from disposing of any assets in his hands; for a receiver to take charge of the same; and that Grafflin be required to bring the assets into Court to be held pending the ascertainment of what was due from Lawton to Grafflin, and what balance would remain applicable to Morton's claim. There was in that case none of

the attached property in the control of the Court of Equity, as there is here, and the custodians of the property attached had never been made parties to the equity suit there, as they had been made here, though subsequently dismissed; and there was no agreement there, as is disclosed to the Court by the record in this case, between the debtor in the attachment case and the garnishee, in respect to the removal of the property attached from the custody of the garnishee.

In that case Morton invoked the original action of a Court of Equity, in the exertion of its extraordinary powers to enable it to administer a remedy at law, without alleging any equitable ground whatever for such action. He sought affirmative, positive intervention in his behalf, through the most far reaching powers of a Court of Equity upon the naked assertion of a lien in virtue of his attachment.

But in the present case all that the attaching creditors ask in their petitions is, that the Court should not pass any order directing or permitting the delivery to the Prince of the attached bonds, then in the control of the Court (as declared in the opinion in 111th Md.) until the final determination of said attachment suits. They did not ask interference in their behalf. They only asked that the Court should refrain from interference in behalf of the defendant in the attachments, by discharging the property attached from the agreement made by the defendant with the garnishee, for the continuance of its custody, for the protection of the garnishee as guarantor of the defendant, upon his own bond. They only asked that the status of the property attached, and in the control of the Court, be not altered by the Court in the interest of the defendant, and that the parties be left to work out each their own salvation in the legal forum in which the attachments were pending.

The Court was informed of the pendency of these attachments not merely by the original petitions of the attaching creditors, but by the subsequent joint petition of the Prince and the attaching creditors, at whose joint instance the American Bonding Company and Alexander Brown and

Sons were made parties to this cause, in which petition the
Court was informed as already stated herein, "that the plain-
tiffs and the defendant in the four several attachment suits
have agreed among themselves with respect to the amount of
the respective claims which constitute the causes of action in
said suits, and that the indebtedness shall be discharged by
means of the sale of certain bonds hereinafter mentioned,"
being the same bonds which were attached.

The Court was also informed not only by the answer of
the American Bonding Company to said petition, and by the
letter of the Prince of October 28th, 1908, to Alexander
Brown and Sons set out in said answer, and also, in the
draft of the decree presented by the counsel of the Prince,
that said bonds were deposited under an agreement between
the Prince and the American Bonding Company that they
should not be removed from the custody of the Safe Deposit
Company by either, without the consent of the other; and
they were informed from said answer of the American Bond-
ing Company that it declined to consent to the removal of
said bonds and claimed the right to retain possession of them
until the final disposition of said attachments.

Of course the Bonding Company could not, by an un-
founded and arbitrary refusal to consent to the removal of
said bonds from the Safe Deposit Company, defeat their
delivery to the Prince under an order of the Circuit Court,
but it was not for that Court to say, after the Bonding Com-
pany had ceased to be a party to the proceedings, and it is
not now for this Court to say, whether the Bonding Com-
pany is under any legal liability by reason of said attach-
ments; and when that company, answering said petition in
good faith, declares that it is advised by counsel "that said
bonds are liable to be taken to satisfy any moneys proved to
be owing by the complainant in this case to the plaintiffs in
each attachment case, and that if it should surrender said
bonds before the disposition or dismissal of said attachment
cases, that it would become personally responsible to the
plaintiffs in said attachment cases," the Circuit Court would

not only have ignored that judicial comity which should always be carefully observed to avoid conflict of jurisdiction, but it would have perverted the powers of a Court of Equity, if it had required the surrender of said bonds, and their delivery to the Prince, before the final disposition of said attachment cases, and we are therefore of opinion that the Circuit Court correctly refused so to order.

But we are of opinion that there was error in directing, as the decree did, that these bonds should remain not only *"where,"* but, *"as they now are,"* and in failing to direct, that, in some proper manner, the registration of said bonds in the names of said infant children, should be cancelled. The Prince was entitled under the opinion of this Court in 111th Md. to a clear and unfettered title to these bonds *whenever* they should be delivered, or should become deliverable to him, and this was an essential part of any decree made in conformity with said opinion.

The failure so to provide in the decree appealed from will require its reversal, but as we have said above it correctly required said bonds to remain *"where* they now are" and properly provided that such action of the Court should be without prejudice to the rights of either the attaching creditors or of the complainant in this case.

When the case is remanded the decree then to be passed should provide for cancellation of the registration of said bonds in the names of the infant children of the Prince, in such manner as the Circuit Court shall deem proper (including making the Safe Deposit and Trust Company of Baltimore, the American Bonding Company and Alexander Brown and Sons, parties, if deemed necessary), and should also provide that such cancellation shall in nowise affect the rights of any of the parties to the attachments pending at the date of the decree of June 6th, 1910, or to any other attachments that any of said attaching creditors may have since caused to be issued, or may hereafter cause to be issued, pending the ultimate delivery of said bonds, or any of them, to said Prince to be held in his own absolute right as he was declared

by this Court in the opinion in 111th Md,, *supra,* to be entitled to hold them.

This brings us to the appeal of Mr. Carter, and the first question for consideration is the appellants objection to the allowance of any fee out of the fund.

Section 137 of Article 16 of the Code of Public General Laws of Maryland provides that in any case where there are infant or non-sane defendants, the Court may, where it may be deemed necessary appoint a solicitor to appear and defend for such infant or non-sane defendant. When this case was instituted, these infant children had received under the distribution made in the Orphans' Court of Baltimore City over $200,000 represented by certain bonds registered in their names. Their guardian *ad litem* was appointed upon the petition of the appellant, in which he set forth that his interest was adverse to that of the infants, and "that in view of their large financial interests it would probably be necessary that the guardian be authorized to employ counsel to defend their interests," and as we have already shown, such application was made by the guardian, and the employment of Messrs. Carter and Semmes was authorized by the Court, Mr. Carter alone however actually arguing the case in their behalf, while Mr. Semmes alone represented the trustees.

The title of these children to this property was absolute against all the world except their father. He alone could successfully attack it, as he has subsequently done, and it comes with ill grace from him, after invoking the aid of a Court of Equity to relieve him from a distribution of his wife's estate to which he had deliberately agreed (though it is just to say upon mistaken advice), and after himself asking that counsel be employed to defend their interest against *his* attack, now to seek to defeat the claim of such counsel to any remuneration out of the fund in controversy, well knowing that these children had no other property out of which compensation could be made.

If, when such counsel were appointed, application had been made to the Court for the allowance of a retainer suitable to

the labor and responsibility involved, we can not doubt that the Court would have had the authority to grant it, and that it would have exercised such authority; nor can we doubt, that when the appellants' bill in the former case was dismissed by the Circuit Court, if an application for a trial fee in that Court, and a further fee in event of an appeal, had been made, the application would have been granted. The question of compensation to Mr. Carter had not been raised when the opinion of this Court in the former case was rendered, and was not dealt with thereby, and we can perceive no reason why the authority of the Circuit Court existing before, should be affected by the opinion of this Court which was silent upon that subject.

We do not think it necessary further to consider the power of the Circuit Court to allow such a fee, nor to consider at all the attempt to shift the burden of such fee from the fund in controversy and place it upon Mr. Winans, the grandfather of these children.

The principle upon which this question should be determined has been indicated in the opinion in the former case. In that case, while determining that the distribution made by the Orphans' Court must be set aside, and the absolute title to the bonds in question be declared to be in the appellant, that relief was granted only upon conditions imposed by it, and founded upon the principle that he who asks equity must do equity.

The Court there said, "Inasmuch, however, as the appellant did not use the requisite diligence to definitely ascertain his legal rights to the trust fund until after the trustees had in good faith, though erroneously, completed the distribution, and so acted toward them as to lead them to believe that he concurred in their views, we will not require them to account for or refund to him either the costs incurred in or about the distribution, or the commissions allowed to them as administrators in the Orphans' Court, but will permit Mr. Latrobe to retain his portion of such commissions, it

being conceded that Mr. Winans gave his portion thereof to the appellant prior to the institution of this suit. For the same reason we will direct the costs of this case to be paid out of the portion of the fund awarded to the appellant before turning the same over to him." The same principles and considerations which the Court felt, then justified and required the action above directed, we now feel justify and require us to direct that a reasonable counsel fee to Mr. Carter must be allowed and paid out of the same fund before it is turned over to him.

It only remains to determine whether the fee allowed shall be $3,000 or $4,000. With his original petition for a counsel fee, Mr. Carter filed on December 14th, 1909, a certificate from Mr. Wm. L. Marbury and Mr. E. G. Baetjer, two distinguished members of the Bar of Baltimore City, and of this Court, that from an examination of the Record and the opinion of this Court, a fee of *at least* $3,000 would be a reasonable fee, it being understood that he acted as sole counsel for the infants. On December 24th these same gentlemen filed a paper termed a statement of facts as to said certificate, in which they state that when Mr. Carter requested their judgment in the matter they signed and gave him a certificate that in their judgment $4,000 was a reasonable and proper fee; that subsequently he stated to them, that while he considered the amount named by them as not larger than he should receive, he preferred (without explaining his reasons) that the Court by its order should not fix a larger sum than $3,000, and requested them to give a new certificate naming such sum, which they did, stating that in their judgment a fee of *at least* $3,000 was a reasonable fee. On January 27th, 1910, Mr. Carter filed a petition asking to be allowed $4,000, and referring to the statement of facts above mentioned. Mr. Carter's grounds for this petition will be best explained and understood by transcribing here a part of that petition, viz.:

"Your petitioner represents that while he would have been satisfied to receive the $3,000 as full compensation for his

services, if the same had been paid to him without subjecting him to the labor and annoyance connected with securing the payment of the same by contest, and is still willing to accept the same in full payment of his services, if the same is allowed by the final order of this Court, and no appeal is taken from such order to the Court of Appeals; but if his right to be paid said amount for his services out of the property above mentioned is to be further contested, he respectfully claims he is entitled to be allowed the amount of $4,000, which in the original certificate given to him by Messrs. Marbury and Baetjer, was certified by those gentlemen to be a reasonable amount for his services; and, therefore, he prays that the sum of $4,000 be allowed to him for his services, and out of the property mentioned in his petition filed in this case on the 14th day of December, 1909, unless, at the hearing upon said auditor's account, all exceptions which may in the meantime be filed to the allowance of the said $3,000, be withdrawn." We must assume, as we unhesitatingly do, that in naming $4,000 as a reasonable amount, Messrs. Marbury and Baetjer exercised a real and conscientious judgment, and if their original certificate to that effect had been filed we are persuaded that the learned Judge of the Circuit Court, applying his own careful judgment to the matter, would have hesitated to reduce the amount in view of all the circumstances of this case. The circumstances are unusual as respects the question of the amount of this fee, but they are fully, and we think satisfactorily, explained by the statement of Messrs. Marbury and Baetjer, and the reasons assigned by Mr. Carter in his petition of January 27th, 1910. We are not disposed in a case of this character, to minimize the value of professional services, and after reviewing the Record in the former case, and the able and elaborate though unsuccessful brief of Mr. Carter, we do not think that $4,000 was more than fair and reasonable compensation. If it was not, then $3,000 is inadequate now, and in our opinion $4,000 should now be allowed.

The decree appealed from must be reversed that a de·ree may be passed in conformity with· this opinion.

> *Decree reversed and cause remanded, the appellant (the Prince de Bearn) to pay the costs, in both cases, above and below.*