FRANCOIS DE BEARN, BERNARD DE BEARN, ODON
DE BEARN AND PIERRE DE BEARN, *vs.*
PRINCE HENRY DE BEARN.

*Attachment; registered bonds of foreign corporations.*

By a decree of a Court of equity, it had been decided that
certain bonds of foreign corporations, registered as to prin-
cipal in the name of certain infants, were the absolute prop-
erty of the father, and that they should be delivered over to
him; certain of his creditors attached the bonds in the hands
of the American Bonding Company, where they had been
deposited.   The father filed a motion that the bonds be
released and discharged from the operation of the attach-
ment; the Court passed an order so relieving and discharg-
ing the bonds on the ground that the Court could not render
a judgment of condemnation under which the bonds could
be sold on execution.   On appeal, it was *held,* that these bonds
should not have been released.                        p. 674

Without deciding that the registered coupon bonds of foreign
corporations, while located in the State, were in all cases
liable to attachment, it was further *held* that these bonds were
*property* within the meaning of section 10 of Article 9 of the
Code of Public General Laws, and under the special facts
appearing in the records and the principles announced in the
prior appeals cited in the opinion, the bonds were liable to
attachment by the creditors of the father.            p. 677

*Decided June 22nd, 1911.*

Several appeals from the Superior Court of Baltimore
City (HARLAN, J.).

These several appeals were argued together before BOYD,
C. J., BRISCOE, PEARCE, BURKE, PATTISON and URNER, JJ.

*J. Kemp Bartlett* (with *Bartlett, Claggett and Bland,* on the brief), for the appellant.

*Maurice Leon,* for the appellee.

BURKE, J., delivered the opinion of the Court.

On June 19th, 1905, Ross R. Winans, a citizen of Maryland, executed in Paris, where he was then temporarily residing, a deed of trust to himself and Ferdinand C. Latrobe, conveying to them railway mortgage bonds of the par value of $284,000.00 upon trust, first, "to receive the interest and income thereof, and apply the same to the use of Beatrice Winan's, the grantor's daughter, during her life, free from the disposal or encumbrance or contract of any husband, and as her separate estate; and, secondly, upon further trust, upon the death of the said Beatrice Winans to dispose of the capital of the fund hereby created in such manner and to and among such person or persons and in such amounts as the said Beatrice Winans may by a valid will and testament, duly executed, appoint, etc."

This deed of trust was executed in contemplation of the marriage of Miss Winans to the Prince de Bearn, which occurred in Paris a few days after its execution. Shortly after the marriage, the Princess executed a will in Paris by which she bequeathed her entire estate to her husband, the Prince. This will, under circumstances which are not necessary to be here stated, was admitted to probate in the Orphans' Court of Baltimore City, and letters of administration *c. t. a.* were granted upon the estate of the Princess to Ross R. Winans and Ferdinand C. Latrobe. The administrators in settling the estate treated the railway mortgage bonds conveyed by the deed of trust as the personal estate of the Princess, and her whole estate, including these bonds, was distributed "under the laws of France," as recited in the account, one-third to the Prince in his own right, and the remaining two-thirds to him as guardian of his two infant children, Henry Ross Joseph Gaston de Galard de Bearn and Beatrice Neva Cecile de Galard de Bearn.

The property distributed to the Prince as guardian by the Orphans' Court consisted of $15,000.00 New York Central and Hudson River Railroad 3½% bonds, due 1997, registered, as to principal only, in the name of his infant son; $14,000.00 New York & Hudson River Railroad Company 3½% bonds, due in 1907, registered, as to principal only, in the name of his infant daughter; $78,000.00 Chicago, St. Paul, Minneapolis & Omaha Railroad 6% bonds, due 1930, registered as to principal only in the name of his infant son; $78,000.00 Chicago, St. Paul, Minneapolis & Omaha Railroad 6% bonds, due 1930, registered as to principal only in the name of his infant daughter.

These bonds were placed in a safe deposit box in the Safe Deposit & Trust Company, Baltimore, under the following circumstances, and were subject to the joint control of the American Bonding Company and Alexander Brown & Sons. The American Bonding Company was on the bond of the Prince as the guardian of his children, and it was agreed that he should deposit these bonds in a box in the vault of the Safe Deposit & Trust Company, Baltimore, registered in the names of the infants. It was further agreed that the box was to be opened only in the joint presence of an officer of the bonding company and a member of the firm of Alexander Brown & Sons, which firm was to cut the coupons from the bonds, retain a commission and pay the premium on the bonds and hold the balance subject to the check of the Prince as guardian.

In the case of the *Prince de Bearn* v. *Winans and Latrobe, Trustees,* 111 Md. 434, this Court reversed the decree of the Circuit Court No. 2 of Baltimore City, and decided that the Prince was entitled to a decree setting aside the settlement and distribution made by the Orphans' Court of Baltimore City, and cancelling the release given by him, in his own right and as guardian, to the trustees and administrators, and that he is further entitled to have the two-thirds of the trust fund, which were distributed to his two children, awarded and

paid over to him absolutely and to hold the same in his own right."

The appellants on this record, claiming to be creditors of the Prince in large sums of money, sued out an attachment against him in the Superior Court of Baltimore City, as a non-resident of this State, by which they seek to subject the bonds above mentioned to condemnation and sale. The writ was laid in the hands of Alexander Brown & Sons and the American Bonding Company as garnishees. Attachments were also sued out of that Court against the Prince by Francois de Bearn, Odon de Bearn, Pierre de Bearn and Jean Baptiste Chaumet, and each writ was laid in the hands of the above-named garnishees. The notice served upon the garnishees was identical in each case, and was as follows: "The attachment caused by said plaintiff to be sued out in the Superior Court of Baltimore City heretofore, to wit, upon said plaintiff's claim against Prince Henry de Bearn, a non-resident of the State of Maryland, and laid generally in your hands, *was intended to* bind $29,000.00 of New York Central & Hudson River R. R. 3½% bonds, with the unclipped coupons thereto, and $156,000.00 of Chicago, St. Paul, Minneapolis & Omaha R. R. 6% bonds, with the unclipped coupons thereto, now held by you and the American · Bonding Company in joint custody and control, *the ownership of said bonds having been recently finally adjudicated and determined by the Court of Appeals of Maryland,* and by which adjudication and determination said bonds are decreed to be the absolute property of the said Prince Henry de Bearn."

On September 14th, 1910, the Prince filed a motion in the Superior Court in which he asked the Court to release and discharge the bonds from the operation of the attachments, because the bonds and coupons are not legally liable to be taken and condemned under the laws of Maryland relating to attachments, for the reasons that the bonds are all evidences of indebtedness payable only outside of the State of Maryland to the registered owner thereof by non-resident

corporations, and that, therefore, said bonds for the purposes of attachment are not amenable or subject to the process of that Court in attachment proceedings.

On September 17th, 1910, the Court passed an order releasing and discharging the bonds from the operation of the writ of attachment and from any levy or garnishment thereunder. A like order was passed in each of the other attachment cases, and from these orders the appeal in this case and those in Nos. 7, 8, 9 and 10 were taken. As precisely the same questions, viz, the liability of these bonds to attachment, upon the special facts appearing in these records, is presented in each case, all the appeals will be disposed of by this opinion.

The reasons which induced the learned judge of the Superior Court of Baltimore City to release the bonds from the operation of the attachment are thus stated in his opinion: "It seems to me where the writ affects in the hands of the garnishee anything but credits, the only thing it can operate, the sole property liable, is property upon the sale of which the title would vest in the purchaser, or the title to which the Court could under the proceedings vest in the purchaser. In this case we have the writ operating upon certain registered coupon bonds. If judgment *in personam* were to be rendered against the custodians of those bonds for the market value of the bonds, I fail to see how it would be possible for him to save himself harmless against that judgment, because of the absence of power in him to sell and transfer the title. If the custodian could not transfer, and there is no person before the Court with power to transfer the title, I do not see how the Court could render a judgment of condemnation under which the bonds could be sold on execution." It was upon this distinct and sole ground that the bonds and attached coupons were released.

In a recent case of *DeBearn v. Winans* and *Latrobe, trustees, ante p.* 139, the Court, speaking through JUDGE PEARCE, said: "But we are of opinion that there was error in directing, as the decree did, that these bonds should remain not

only *'where'*, but, *'as they now are'*, and in failing to direct, that, in some proper manner, the registration of said bonds in the names of said infant children, should be cancelled.   The Prince was entitled under the opinion of this Court in 111 Md. to a clear and unfettered title to these bonds *whenever* they should be delivered, or should become deliverable to him, and this was an essential part of any decree made in conformity with said opinion.   The failure so to provide in the decree appealed from will require its reversal, but as we have said above it correctly required said bonds to remain "where they now are", and properly provided that such action of the Court should be without prejudice to the rights of either the attaching creditors or of the complainants in this case.   When the case is remanded the decree then to be passed should provide for cancellation of the registration of said bonds in the names of the infant children of the Prince, in such manner as the Circuit Court may deem proper (including making the Safe Deposit and Trust Company, Baltimore, the American Bonding Company and Alexander Brown & Sons, parties, if deemed necessary), and should also provide that such cancellation shall in nowise affect the rights of any of the parties to the attachments pending at the date of the decree of June 6th, 1910, or to any other attachments that any of said attaching creditors may have since caused to be issued, or may hereafter cause to be issued, pending the ultimate delivery of said bonds, or any of them, to said Prince to be held in his own absolute right as he was declared by this Court in the opinion in 111 Md., supra, to be entitled to hold them."

And in the case of the *Prince de Bearn* v. *Winans et al., ante p.* 604, JUDGE BOYD, speaking of the bonds involved in these attachment cases, said, "it is true the bonds were registered, but if in the attachment cases it be held that they can be made subject to the operation of the attachment, and are condemned in the hands of the garnishee, or any of them, then undoubtedly a Court of Equity would be authorized, by proper proceedings, to have them transferred in such way

as would make the judgments effective. There is no longer
any doubt about their belonging to the appellant, and if
they can be condemned, what we have said about a Court
of Equity not giving its aid would not apply, if it becomes
necessary to have its aid in enforcing judgment, if such be
obtained."

It is, therefore, obvious that the bonds should not have
been released for the reasons stated in the opinion of the
lower Court.

In the brief of the appellee that portion of the opinion of
the lower Court, quoted above, is transcribed and relied
upon, and it is declared, "that upon the uncontroverted evi-
dence before the Court the learned judge could have reached
no other conclusion". This contention was fully answered
in the opinion in the two recent cases referred to above.

The only other ground upon which it is insisted that the
bonds were properly discharged is that the only lawful proc-
ess whereby the registered corporate debts may be attached
is under *section* 18, *Article* 9, *and section* 392, *Article* 23,
*of the Code,* and since the records show that these sections
were not, and could not be, complied with, the bonds are
not attachable and were properly released. *Section* 18, *Arti-
cle* 9, *of the Code of* 1904, provides that "an attachment
may be laid on any interest which the defendant has, or
may be entitled to, in the stock of any corporation, or in
the debts of any corporation, transferable upon the books of
such corporation; and it shall be the duty of the sheriff or
other officer in laying such attachment to comply with the
requirements contained in Article 23, title 'Corporations',
of this Code, in relation thereto. Section 392, Article 23,
of the Code reads as follows: "The sheriff or other officer,
upon being instructed to levy such writ on any such stock
or debt shall deliver to the president or chief officer or
leave at the place of business of such corporation a notice
in writing stating that he has seized the stock or debt of the
defendant (naming him), and the purpose for which he has

seized the same, and shall retain a copy of such notice, and return it with the writ."

The argument of the appellee is thus stated in his brief: "While section 18 of Article 9 declares it to be 'the duty of the sheriff or other officer in laying said attachment to comply with the requirements contained in Article 23, title 'Corporation', of this Code in relation thereto,' the sheriff, for whom it would have been impossible to deliver any notice to the president or chief officer of either of the respective debtor corporations, or leaving at the place of business, of such corporation respectively, the notice prescribed by section 392 of Article 23, obeyed the appellants' instructions and delivered to persons alleged to have 'joint custody and control' of written certificates of corporate debt registered outside of the State, certain notices subscribed and subsequently filed in behalf of the appellants, stating that the respective attachments were intended to bind such debt. To uphold such means of attachment would amount to reading into the statute a provision substantially to the effect that an attachment may be laid on any interest which the defendant has or may be entitled to in the debt of any corporation transferable upon the books of such corporation, by leaving notice with such persons as may have custody or control of the written evidences of such debt issued by debtor corporations outside of the State."

The sections of Art. 23 of the Code of 1904, referred to in sec. 18, Art. 9 of the Code of 1904, are sections 391 to section 401, inclusive, under the sub-title "Execution against the stock of corporations"; but it is evident from section 417 of Art. 23 that these sections are applicable *only to corporations formed under the general laws of this State.* These sections were all repealed by the Act of 1908, Ch. 240, which substituted certain new sections in lieu of those repealed. Section 43 of the Act of 1908, Ch. 240, makes provision for the execution or attachment of shares of stock of *corporations of this State;* provides the duties of the sheriff and of the officers of the corporations; but is silent

upon the subject of the registered debt of corporations. It is, therefore, we think quite apparent that the order appealed from can not be sustained by virtue of the sections of the Code of 1904, relied upon by the appellee.

Section 10 of Art. 9 of the Code provides that "any kind of property or credits belonging to the defendant, in the plaintiff's own hands, or in the hands of anyone else, may be attached; and credits may be attached which shall not then be due."

The bonds attached in this case are within the jurisdiction of the Court, and the Circuit Court No. 2 has jurisdiction over the appellee and his infant children, and may acquire at any time jurisdiction over the custodians of the bonds, and in the event of the condemnation of the bonds in the hands of the garnishees, or any of them it would have the undoubted power "by proper proceedings to have them transferred in such way as would make the judgment effective."

The bonds attached are the absolute property of the defendant in the attachments. Their registration in the names of his infant children is a mere shadow upon the title, which the Court has power and which it is its duty to remove. It is its duty to cancel the registration of the bonds in the names of the infant children, and it may appoint a trustee with authority to authorize the cancellation of the bonds upon the books of the railroad companies. There is no reason to suppose that these companies would ignore the decree of a Court having full power and jurisdiction over the parties and the subject-matter. On the contrary, there is every reason to think that they would give full faith and credit to the decree. But if such an improbable thing should happen that they should refuse to recognize the validity of the decree, it can not be doubted that the Prince or any one succeeding to his title would have the right in the proper forum to compel the cancellation of the registration of the bonds in the names of the infants.

It is not necessary to determine in these appeals the general question as to whether or not registered coupon bonds of foreign corporations are in all cases liable to attachment when located in this State. What we do decide is, that these particular bonds are property within the meaning of section 10, Art. 9 of the Code of 1904, and that under the special facts appearing in the records and under the principles announced in the prior cases referred to in this opinion, these bonds are liable to attachment, and in the event of the appellants succeeding in the attachment suits the bonds may be condemned and sold.

As to the bonds attached, the final judgment to be entered must be a judgment of condemnation against the specific bonds, and not a judgment *in personam* for their value against the garnishees, or any of them. Upon such a judgment a writ of *fieri facias* may be issued and the bonds sold, after the cancellation of their registration shall have been made conformably to the previous decisions of this Court referred to in this opinion.

> *Order reversed, and case remanded, with costs*
> *to the appellants above and below.*