## LOUIS ELIE JOSEPH HENRI GALARD DE BRAS-SIC, DE BEARN, COUNT AND PRINCE DE BEARN AND CHALAIS vs. ROSS R. WINANS AND FERDINAND C. LATROBE ET ALS.

*Appeals: remanding for further proceedings; effect of former decision. Attachment: sale of property; creditors' rights in equity. Costs in Court of Appeals: unnecessary matter in record.*

But the decree should not authorize the seizure or sale of the bonds in the condemnation proceedings until after the cancellation of the registration, so as not to sacrifice the bonds.

pp. 401-402

Questions raised and decided on appeal are not open to question or review upon a second appeal of the same cause.

pp. 392-393

Where a decree is reversed on appeal, on certain points only, and remanded for further proceedings in accordance with the opinion of the Court of Appeals, it is error to alter the decree upon points as to which there had been no reversal on the first appeal.                                   p. 393

Certain bonds held by trustees had been wrongly registered in the names of parties other than the true owner; the owner had obtained a decree for the cancellation of such registration and for the return of the bonds to him; meanwhile, and pending the further proceedings, creditors of the true owner endeavored to attach the bonds and to prevent their delivery to him; the owner then instituted proceedings to resist the cancellation, and it was *held*, that equity was under no obligation to aid him in avoiding his creditors, but that it was its duty to give the latter the equal protection of the laws, and not to exercise its power to put the bonds beyond their reach.                                         p. 397

Should the real owner of the bonds interfere with the cancellation, then, it was further *held*, the trustees should be ordered

to deliver the bonds to the sheriff, to be sold while still registered, the purchaser to take necessary steps to have the registration cancelled.                    p. 401

Property attached is not sold under the attachment proceedings; but, after a judgment of condemnation, an order of *fieri facias* is issued for the purpose of selling the property condemned.                    p. 398

Where the record contains much matter which should not have been included, and the main questions were decided against the appellant, the costs may be ordered to be paid from the fund.                    p. 402

*Decided January 15th, 1913.*

Appeal from Circuit Court No. 2 of Baltimore City (GORTER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Maurice Leon,* for the appellant.

*Shirley Carter* and *J. Kemp Bartlett* (with *J. Kemp Bartlett, Edgar Allan Poe, L. B. Keene Claggett* and *R. Howard Bland* on the brief), for the appellees.

*Bernard Carter & Sons, John E. Semmes* and *Shirley Carter,* filed a brief in behalf of Bernard Carter and Ross W. Whistler, executor of Ross R. Winans, deceased, appellees.

BOYD, C. J., delivered the opinion of the Court.

There have been so many appeals in reference to the bonds in controversy in this case that it will perhaps be well to recall just what has been determined. It was decided in *Prince de Bearn* v. *Winans,* 111 Md. 434, that the Prince was "entitled to a decree setting aside the distribution of the fund made by the Orphans' Court and cancelling the releases given by him in his own right and as guardian to the trustees and administrators, and that he is further entitled to have the two-thirds of the trust fund which were distributed to his two children awarded and paid over to him absolutely, and to hold the same in his own right." For the reasons stated in the opinion, that general statement was qualified by saying: "We will not require them (the trustees) to account for or to refund to him either the costs incurred in and about the distribution or the commissions allowed to them as administrators in the Orphans' Court * * * For the same reason we will direct the costs of this case to be paid out of the portion of the fund awarded to the appellant before turning the same over to him." The "trust fund," as it is spoken of in the opinion, consisted of railroad bonds which had been distributed by the Orphans' Court of Baltimore City to the two children of the Prince under a mistaken theory of the law applicable to the distribution.

2. Mr. Bernard Carter was appointed by the Court to represent the children in that case, as they were the real parties in interest. At the time the decision above referred to was made, no question had been made about Mr. Carter's compensation and hence it was not then passed on, but after the case was remanded a new decree was passed and in that a fee was allowed him out of the fund. The Prince appealed from that allowance, and Mr. Carter also appealed from the amount allowed him. In *De Bearn* v. *Winans,* 115 Md. 139, we determined that Mr. Carter was entitled to the amount he claimed, and that it was to be paid out of the property awarded to the Prince by the former decision; his right to a

fee and the amount were then and there definitely deter-
mined, and they are therefore no longer open questions and
will not be further discussed.

3. No question was raised at the argument of this appeal
about the claim of Messrs. Barton, Wilmer, Ambler and
Stewart, who were formerly associated with Mr. Leon, solici-
tor and attorney in fact of the Prince. Since the case was
argued, a letter has been received by the Court from Mr.
Barton stating that Mr. Leon had requested him to write
that the matter of their fee, for which provision was made
in the decree of June 10th, 1912, now being reviewed, had
been settled out of Court. It will therefore be unnecessary
to refer to that further.

4. The costs of the first case were expressly directed to be
paid out of the portion of the fund awarded to the appel-
lant, but we do not understand why the amount of the costs
is named in this decree as $1,569.60. In the decree of June
6, 1910, which was passed on by us in 115 Md. 139, that was
reduced to $1,477.00. While we did not discuss that par-
ticular item we reversed the decree on two grounds only—
that it did not provide for the cancellation of the registration
of the bonds, and that Mr. Carter was entitled to a fee of
$4,000.00 instead of $3,000.00. In remanding the case if
we had thought there was error in reducing the amount we
would have said so. The amount of the costs to be allowed
should therefore be $1,477.00.

5. The most important questions in the decree appealed
from are necessarily more or less interwoven with the judg-
ments of condemnation rendered in favor of attaching cred-
itors, which are involved in Numbers 91-98 of the docket
of this term. They were decided before this decree was
passed, but the records in those cases were for some reason
transmitted to this Court five weeks after this one was
received. In passing on the decree we will therefore be
compelled to refer to those cases. It may be well in the
beginning to say that Point 4 in what is called a "motion,"
filed in Nos. 95 and 96, does not correctly state what was

done in the case of *De Bearn* v. *Prince De Bearn,* 115 Md.
668, where it says, "The judgment seeks to apply a different
rule of law and a different construction of section 10, Article
9, of the Maryland Code of 1904, to these particular bonds
from that which would apply to all other cases of registered
coupon bonds of foreign corporations located within the
State," etc.   That opinion and others in that volume of the
Maryland Reports pointed out the peculiar and unusual con-
ditions existing in reference to these bonds and, as was
plainly shown by the opinion, this Court concluded that
these special facts and circumstances connected with the
bonds differentiated this case from cases in which there
was the simple question whether or not registered coupon
bonds of foreign corporations are liable to attachment when
located in this State; but of course any other case of like
facts and circumstances would be governed by the same con-
struction of that section, and the opinion nowhere indicates
or suggests that a different rule would be applied to *"all other
cases* of registered coupon bonds of foreign corporations
located within the State."   The attorney for the appellant
has displayed great industry in the presentation of the vari-
ous appeals we have heard, but he has not yet brought to
our attention any decision which was based on such peculiar
facts as we have before us.

There were a large number of coupon bonds, payable to
bearer, which were distributed to the two children of the
appellant, but they were erroneously so distributed, as we
held in the case in 111 Md. 434.   Doubtless in order to
comply with the requirements of the American Bonding
Company, which was surety on the appellant's bond as
guardian, and possibly acting under Chapter 270 of the
Acts of 1906 (sec. 39 of Art. 93 of Code of 1912), which
authorizes fiduciaries, including guardians, to arrange with
such surety for the safe keeping of money, assets and prop-
erty for which they are liable, those coupon bonds were
registered, as to the principal, and deposited in the vault
of the Safe Deposit Company of Baltimore City, under the

arrangement made with the American Bonding Company and Messrs. Alexander Brown & Sons, shown in this and other records of the several cases which have been before us. The appellant filed his bill of complaint in the lower Court and prayed, amongst other relief sought, that the proceedings of the Orphans' Court be declared void, that the releases given by him to the trustees and administrators be cancelled, and for general relief. We sustained his contention and held that he "upon the death of his wife and the probate of her will became entitled in his own right to the bonds held by the trustees under the deed," and that "it necessarily follows that the return by them of the bonds to the Orphans' Court as part of his wife's estate, and the attempted distribution thereof by that Court as part of her estate, was without warrant of law and of themselves operated to confer no title to the bonds upon the persons to whom the distribution was made." We also said "That property is still in existence and within reach of the Court and it is but equitable that it should be returned to him," and we then concluded that opinion by stating what is quoted in the first part of this opinion.

The Court undoubtedly had jurisdiction of the bonds in the equity case, as it did of the appellant, the infant children and subsequently of the American Bonding Company and Alexander Brown & Sons. While the case reported in 111 Md. was pending in this Court, and soon afterwards, certain parties claiming to be creditors issued attachments against the Prince and became parties to the equity case. After the mandate from this Court controversies arose between the appellant and others as to costs and fees and also between him and the attaching creditors. The different parties in interest presented to the lower Court drafts of decrees according to their several contentions. The one presented by the appellant recited the facts in full and amongst other things provided that the clerk of that Court should open the safe deposit box containing the bonds and bring them into Court, that he be ordered "to make and

execute such instruments relating to each and every one
of said bonds as may be requisite to accomplish the transfer
of the registration of said bonds, and each and all of them,
upon the books of the respective corporations issuing them
from the said infants to bearer, and deliver such instru-
ments with said bonds to the plaintiff" or his attorney in
fact—subject to certain provisions relating. to the holding
of some of the bonds. The Court passed the decree in
accordance with the contention of the other parties, and it
was passed on by us in *De Bearn* v. *Winans,* 115 Md. 139.

These were, therefore, coupon railroad bonds, payable to
bearer, which without warrant of law and by a void dis-
tribution were distributed to the two infant children, when
they in fact belonged to the appellant, and then, in pur-
suance of that void distribution, were improperly registered
in the names of the children. The appellant as well as all
other parties to the cause conceded that under our decision
in 111 Md., the registration should be cancelled, and this
Court said in 115 Md. 151, "This was an essential part of
any decree made in conformity with said opinion," and
reversed that decree because it· did not so provide. As
Judge Burke said in 115 Md. 676, "Their registration in
the names of his infant children is a mere shadow upon the
title, which the Court has power and which it is its duty
to remove." The cancellation of the registration of the
bonds was authorized and in effect directed by the Court
before any attaching creditor had intervened or we had any
knowledge of them, and of course nothing was said as to the
rights of persons not parties to the case. But after they
had intervened in the lower Court we sustained in 115
Md. 139 the decree in so far as it directed that the bonds
should be kept "where they were," but held there was error
in ordering them to be kept "as they now are," without
providing for the cancellation of the registration. The pro-
longed controversy and the various appeals have interfered
with our original directions being thus far carried out, but
the time must come, even though, if we judge from the

past, it 'may be still far off, when our decision, rendered December 3, 1909, will in that respect be enforced.

The cancellation of the registration of the bonds was not directed by the equity Court in order that the attachments might become effective, but because that was essential in order to restore to the appellant what we decided rightfully belonged to him. It would have been done if there had been no attachments or controversy between the appellant and other parties. It was necessarily a sequence of what had already been decreed, and the only reason it had not been done two years before the judgments of condemnation were rendered was that the controversies which we have spoken of had arisen after the original case had been decided by us. It cannot, therefore, be fairly or truly said that the Court of equity proposed to change the status of the property attached in order that it might be condemned, but it was doing what was necessary to be done in order to carry out the decree of the Court, which had been rendered at the instance of the appellant himself. When, however, the rights of other persons, who claimed to be *bona fide* creditors of the Prince, were brought to the attention of the equity Court, it was not only not under any obligation to assist him in avoiding such creditors, but it was its duty to give them the equal protection of the law, and not exercise its powers to put these bonds beyond their reach before their rights could be determined. The opinion in 115 Md. on pages 610-612 sufficiently shows our position on that subject.

Assuming the bonds to have been subject to attachment, if they were payable to bearer and not registered, the practical question, therefore, in reference to the judgments or condemnation of these bonds in the condition we have shown them to be was, whether a registration in the name of the infants which was decided to be erroneous and the result of an illegal and void distribution, and which had been ordered to be cancelled by this Court, can prevent their being condemned as the property of the appellant, which

they are conceded to be? It should not be forgotten in answering that question, that in 115 Md. 139 this Court reversed the decree of June 6, 1910, because it should have provided for the cancellation of the registration of the bonds which "was an essential part of any decree made in conformity with said opinion" in 111 Md. It must also be remembered that under our practice property attached is not sold under the writ or attachment, but that after judgment of condemnation a writ of *fieri facias* is issued for the purpose of selling the property so condemned. If there be any difficulty about the Court of law, which renders the judgments of condemnation, passing such orders as are necessary to protect the property from sacrifice at a sale made under a writ of *fieri facias,* which we need not discuss, the circumstances of this case are such as to require action by a Court of equity, as it would not allow the possession of the bonds by its trustee to be disturbed until its consent is given, and then it can impose such terms as to the seizure and sale of the bonds as are necessary to prevent a sacrifice and to protect the interests of all parties.

Is it to be said then that these bonds, which are admittedly the property of the appellant, but are illegally registered in the names of others, which registration had long prior to ·the judgments of condemnation been ordered by the Court of last resort in the State, which had jurisdiction over the parties and the property, to be cancelled, can not be condemned merely because of this seeming infirmity in their title, which in fact has no real existence? If the title to real estate stood on the records in the name of A., and a Court of equity decided that it belonged to B. and directed it to be conveyed to him, and an attachment against B. was levied on it before it was so conveyed, would that prevent a judgment of condemnation being rendered? Surely not, and after it was rendered the Court of equity could enforce its order for the conveyance of the property and thereby make the land records disclose the true and not the fictitious title. We might give other illustrations, but do

not deem it necessary, for unless there is something peculiar in the application of the law to railroad bonds, which represent millions and millions of dollars of the wealth of the country, and which are the subjects of daily sales in small and large quantities all over the land, we can see no reason why they should be immune from the owner's creditors under such circumstances as we have before us. Millions of dollars of them are held by people that the obligors never heard of and know nothing about, except that banks, trust companies and others in different localities send the coupons to them or their agents for payment. They are totally unlike ordinary choses in action in many particulars, and the obligors have ordinarily no concern as to what persons are the holders of them, except to see that they are paid to the right parties when they mature. The coupons of these bonds were not registered, and as a Court of competent jurisdiction has directed that the registration of the principal be cancelled, the companies issuing them could not and doubtless would not ask more than that the cancellation be made by one authorized by the Court to make it.

We have thus discussed more at length than perhaps we were called upon to do, in view of what we have previously said which we must be governed by, some of the questions raised in this case, but as our position has apparently been misunderstood on some of the questions, we concluded to repeat what we have in substance hitherto said. If the position taken by the Prince is correct, then after a Court of Equity decides a case determining the rights between two parties, it has no power to give a third party relief against the successful one in the original proceeding, although it still has the property in controversy under its control and still has jurisdiction over the original parties until the property is finally disposed of. What we said on page 610 of 115 Md. is sufficient to indicate our views on that question without further discussion of it.

We will now consider the form of the decree appealed from. In the first clause (after the preamble) it is decreed,

"that said bonds are hereby declared to be payable to bearer."
That declaration is not only in conflict with a subsequent
clause, but the facts of the case do not justify it. They are
not yet actually payable to bearer, although they ought to be
in order to conform to the previous decision of this Court.
The railroad companies are not parties to this case, and have
not had such legal notice as they would be entitled to before
such a declaration as to the present status of the bonds should
be made. Their books doubtless show that the principal is
registered in the names of the infants, and hence payable
to them, while this provision in the decree declares them to
be now payable to bearer. That might mislead purchasers.
We have not said and did not intend to say that they were in
fact now payable to bearer, but we have said that they do in
fact belong to the appellant and that they should be made
payable to bearer, by cancelling the registration which makes
them on their face payable to the infants. As we have so
decided, we are likewise of opinion that they are to be
treated for the purposes of the judgments of condemnation as
if they had already been made payable to bearer, for inas-
much as we have directed them to be made so payable, which
was done at the instance of the appellant who owns them and
is entitled to them, according to our decisions, and inasmuch
as it has already been determined that it is the Court's "duty
to cancel the registration of the bonds in the names of the
infant children, and it may appoint a trustee with authority
to authorize the cancellation of the bonds upon the books of
the railroad companies" (115 Md. 676), we can see no
reason why they can not be condemned.

The decree does appoint a trustee and he is directed to do
what is necessary to make the bonds payable to bearer. That
is in accord with our previous decision. As indicated above,
however, we are of the opinion that the decree should not
authorize the seizure of any of the bonds under writs of
*fieri facias* to be issued on the judgments of condemnation
or the sales of them by the sheriff until "after the cancella-
tion of the registration shall have been made conformably to

the previous decisions of this Court" as stated in 115 Md. 677. That is proper, if not necessary, in order that they be not sold while they still stand in the names of the infants, if that can be avoided, as such a sale might cause them to be sacrificed. Such bonds usually have a well known market value, subject only to the usual fluctuations of the market, and the decree should limit the delivery by the trustee to such number of them as will be necessary, having due regard to their market value if it can be ascertained, to satisfy the respective judgments of condemnation. In short every precaution should be taken to prevent a sacrifice of the bonds, but none of them should be delivered to the sheriff by the trustee before the registration is cancelled, unless the cancellation be prevented or obstructed by the appellant, or some one acting for him. If the Court be satisfied that such is the case and that the cancellation is being interfered with by the appellant, then it can authorize the trustee to deliver them to the sheriff, to be sold without the cancellation being first made. Our object in having the registration first cancelled is to protect the appellant against the risk of the bonds being sacrificed, but we are of the opinion that they can, under the existing circumstances, be sold without that being done, and the purchaser can then take the necessary step to have the registration cancelled, and if the appellant prevents the cancellation before the sale he will have to take the consequences.

We will only add on this branch of the case that in what we have said above we have assumed that the judgments of condemnation were regularly entered and that they will be sustained by this Court in the appeals from them, as the proceedings in this case show that they have been rendered and all motions to vacate them have been overruled before the passage of this decree. In the appeals from those judgments we will determine whether they were properly entered.

This decree does not provide for setting aside the distribution in the Orphans' Court, for vacating the guardianship

proceedings, or setting aside the releases. We have finally determined all those questions and remanded the case in 111 Md. for further proceedings in conformity with that opinion. The lower Court apparently proceeded on the theory that the decree of June 6, 1910, was reversed in part and affirmed in part, but while we only differed with the lower Court in respect to two items, that decree was reversed and the new decree ought to have contained the provisions referred to above. That could however have been easily remedied as the decree now before us provides that the parties can apply for such further order or decree as may be needed. But inasmuch as we will reverse the decree because it declares that the bonds are payable to bearer, and because it does not provide for the cancellation of the registration of the bonds before they are seized in the hands of the trustee and sold by the sheriff, as stated above, as well as for the error as to costs in paragraph 4 above, the new decree should provide for setting aside the distribution and the releases and vacating the guardianship proceedings. Inasmuch as this record contains a great deal which should not have been in it, and the main question is decided against the appellant, we will direct the costs to be paid out of the fund.

> *Decree reversed and cause remanded for further proceedings, the costs to be paid out of the fund.*