PRINCE DE BEARN *vs.* PIERRE DE BEARN.

ALEXANDER BROWN & SONS *vs.* SAME.

PRINCE DE BEARN *vs.* FRANCOIS DE BEARN.

ALEXANDER BROWN & SONS *vs.* SAME.

PRINCE DE BEARN *vs.* ODON DE BEARN.

ALEXANDER BROWN & SONS *vs.* SAME.

PRINCE DE BEARN *vs.* JEAN BAPTISTE CHAUMET.

· ALEXANDER BROWN & SONS *vs.* SAME.

*Attachment: railroad bonds registered in name other than owner's; in possession of trustee; refusal to deliver—; condemnation without actual seizure; property of non-residents; amendments in attachment proceedings; sufficiency of cause of action; question not to be first raised on appeal.*

The provisions of section 13 of Article 9 of the Code requiring proof, in attachment cases, of the debt due, and also the amount of the assets in the hands of the garnishee subject to attachment, only apply in cases where there are garnishees, and do not apply to judgments or condemnations *nisi* of property attached as per schedule.     pp. 422-423

If a judgment of condemnation exceeds the amounts named in the account, the error may be corrected by filing a *remittitur*.     p. 423

In attachment, actual seizure of the property is not always necessary; but when it can not be seized and taken from the hands of a garnishee the plaintiff has the right to interrogate the garnishee and thus get a description of the property into the record, so that judgment of condemnation of equitable interests may be definite and certain.                    p. 427

But if the garnishee voluntarily files a list of the securities, with their name and number, etc., the securities may be taken and condemned without actual seizure.                    p. 428

Bonds which were wrongly distributed to, and registered in the name of others than the rightful owner, were deposited by a trustee in a deposit company. The owner, who was a *non-resident,* in proper proceedings in the courts of Baltimore City obtained an order setting aside the distribution, and decreeing that the registration should be cancelled and the bonds returned to him; pending these proceedings, certain of his creditors sought to attach the bonds; the owner objected that the judgment of condemnation was rendered without jurisdiction over any property of the defendant in the State; it was *held,* that as the bonds were in the City of Baltimore, and as they had been awarded to the owner by the courts of that city, and as they were still under the jurisdiction of the Court, it had jurisdiction to issue the writ of condemnation in the attachment proceedings, at the instance of the owner's creditors.                    p. 429

All papers in attachment cases can be amended in the same manner and to the same extent as proceedings in any other suit or action at law.                    p. 429

In attachment proceedings, when the sufficiency of the cause of action filed with the attachment was not decided or raised in the Court below, the question can not be raised on appeal.
                    p. 430

*Decided January 15th, 1913.*

Several appeals for the Superior Court of Baltimore City (Dobler, J.).

The facts are stated in the opinion of the Court.

The several appeals were argued together before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Charles A. Marshall,* for Alexander Brown & Sons, garnishees.

*J. Kemp Bartlett,* for Pierre de Bearn.

*Maurice Leon,* for the American Bonding Co., garnishees.

BOYD, C. J., delivered the opinion of the Court.

Pierre De Bearn, Francois De Bearn, Odon De Bearn and Jean Baptiste Chaumet, four creditors of Prince De Bearn, issued attachments against him which were laid in the hands of the American Bonding Company of Baltimore and Alexander Brown and Sons, as garnishees. There are four records, and appeals were taken by the Prince and Alexander Brown and Sons in each case—making eight appeals which were argued together. A judgment of condemnation was entered in each case, which recites that "The plaintiff in this case having produced to the Court legal and satisfactory evidence of the defendant's indebtedness to him in the sum of,"—the amount being named—"it is this 28th day of May, 1912, ordered that a judgment of condemnation be and is hereby extended against so many of the twenty-nine New York Central & Hudson River Railroad Company 3½% bonds, due in the year 1997, and of the one hundred and forty-seven Chicago, St. Paul, Minneapolis & Omaha Railroad Company 6% bonds, due in the year 1930, * * * said bonds now being in a safe deposit box in the vault of the Safe Deposit and Trust Company of Baltimore rented by

said company to Alexander Brown & Sons and the American Bonding Company of Baltimore, as shall be necessary to fully pay and discharge said indebtedness, together with the costs of this action." The blank space above describes the bonds by their numbers, and after what we have quoted there in a provision that a sufficient number of them to cover the fee of Mr. Carter and the unpaid costs in the equity case are to remain unaffected by the judgment. That fee and the costs referred to are mentioned in the opinion filed in the equity case of *Prince De Bearn* v. *Winans et al., ante,* p. 390, and in the previous decisions in 115 Md. 139, 604, 668, 685.

Motions were made in each case by the Prince and each of the garnishees to strike out the judgments of condemnation, which were overruled. An appeal was entered in each case by Mr. Leon, "attorney for Prince Henry De Bearn, appearing specially for the purpose of contesting the jurisdiction of the Court, and for no other purpose whatsoever," and by Alexander Brown and Sons from the judgment and from the order of Court overruling the motion of the garnishees to strike out and vacate the judgment. In *De Bearn* v. *Prince De Bearn,* 115 Md. 668, we reversed an order of the Superior Court of Baltimore City which released and discharged the bonds from the operation of these attachments and from any levy or garnishment. It will be seen from page 677 that it was distinctly decided in that case that these bonds are properly within the meaning of sec. 10, Art. 9, of the Code, and that under the special facts appearing in the records and under the principles announced in prior cases referred to in that opinion they are liable to attachment, and in the event of the attaching creditors succeeding in the attachment suits the bonds could be condemned and sold; that the final judgment to be entered must be. a judgment of condemnation against the specific bonds, and not a judgment *in personam* for their value against the garnishees, and that upon such a judgment a writ of *fieri facias* could be issued and the bonds sold, after the cancellation of their registration shall have been made

conformably to the previous decisions of this Court. Those questions are therefore no longer open and we will not discuss them.

The Prince's motion in each case to set aside and strike out the judgment of condemnation alleged that the property could not be condemned for the following reasons: 1. That said property has not been seized in this case. 2. That the sheriff's return does not purport to show any actual seizure of the property which said judgment purports to condemn, but only certain garnishments with respect to same; and 3, that said judgment was not due process of law and the defendant is deprived thereby of his property without due process of law and is thereby deprived of the equal protection of the laws, in violation of the Constitution of the United States and particularly of section 1 of the Fourteenth Amendment thereto. The motion of Messrs. Alexander Brown and Sons was based on the following grounds: 1. That from the papers and proceedings in this case it affirmatively appears that the Court was without jurisdiction to find that the defendant is indebted to the plaintiff in any sum of money; 2. That it affirmatively appears that the Court was without jurisdiction to condemn the bonds. The motion of the American Bonding Company was in effect the same, but it has not appealed.

We will first consider the grounds relied on by the garnishees. There is no judgment *in personam* against the Prince, and the recital in the first part of the judgment of condemnation was simply to fix the amount for which the property condemned was liable. Inasmuch as there were garnishees, it may be that the Court had in mind the provisions of section 13 of Article 9, which require, in certain cases where there are garnishees, proof of the debt due the plaintiff and also of the amount of the assets in the hands of the garnishees subject to attachment. It was held in *Western Bank* v. *Union Bank,* 91 Md. 624, that the provision "No judgment of condemnation *nisi,* shall be made absolute without such proof" only applied to cases where

there were garnishees, and not to judgments of condemnation *nisi* of property attached as per schedule. Inasmuch as there were garnishees in these cases it may have been thought best to have the evidence of the defendant's indebtedness produced before the Court, but however that may be, the defendant could not possibly be injured by it, unless the amounts of one or more of the judgments of condemnation exceeded the amounts named in the respective writs and as they are not in the records, we have no means of passing on that question. If such was the case, the error could have been corrected by filing a *remittitur* which would have furnished no ground for impeaching the judgments either on writ of error, appeal or by motion. *Post* v. *Bowen,* 35 Md. 232. The first ground for vacating the judgments alleged by the garnishees was therefore not a valid one. The argument or "motion," as it is called, filed in the case of *Odon De Bearn* by the Prince proceeds on what seems to us to be a theory contrary to that of the garnishees. Point 1, is that the judgment of condemnation was rendered without legal evidence of the indebtedness due and owing by the defendant to the plaintiff. We will later refer to this question, but only do so now to show the conflicting positions between the Prince and the garnishees as to the question above considered. The second ground relied on by the garnishees was likewise without foundation, under the view we take of the power of the Court to condemn the bonds. Even if there were irregularities in the proceedings it does not follow that the Court was without jurisdiction.

Turning then to the reasons assigned by the defendant, we will consider the first and second together. We do not regard the case of *De Bearn* v. *Prince De Bearn,* 115 Md. 668, necessarily conclusive of the question whether there should have been an actual seizure of the property. The question there involved was whether the lower Court was right in releasing the bonds, and while it is true that the record contains the return of the sheriff in each case, the return might have been amended or proceedings might have

been adopted which would have met the objection. In this connection it may be well to say that we do not agree with counsel for the appellant that this Court had no jurisdiction to determine the question we did determine in that case. While the lower Court did not quash the attachment, it did release the bonds which constituted the property in controversy. It is true that the sum of $8.16 was admitted by Alexander Brown and Sons to be in their hands, but about that there was no contention, and the only controversy in the case was concerning the bonds. The decision of the lower Court was a final determination of the rights of the parties as to the real controversy in the case—whether the bonds could be attached—if it could not be reviewed by us. The motion to quash was overruled, but the motion to release and discharge the bonds was granted and they were ordered released and discharged. Such an order is not expressly authorized by our attachment laws, and it is, to say the least, a very unusual one, but without deeming it necessary to determine whether the Court in which an attachment is pending can properly pass such an order, if it can without express authority in the statute, an appeal can certainly be taken in a case like this, as it is virtually a determination of the case. No authority could be cited which presents stronger reasons why an appeal should be allowed than the present, for if the bonds were released further contest was useless and unless there was the right of appeal the effect of the order could not have been stayed. The appellant has apparently shifted his position in respect to this question, as he has in reference to others, for when that appeal was heard he asked that the order be affirmed and not that the appeal be dismissed.

To return now to the question of the necessity of a seizure by the sheriff. The appellant quotes from *Hodge and Mc-Lane on Attachments,* Section 190, where it is said: "If *specific property* is to be condemned, it must be scheduled by the sheriff; or if he is not permitted to seize it actually, and so returns, then it may be discovered and reached by inter-

rogatories to the garnishees." Those authors go on to say: "It is only that which is seized and scheduled, and so returned by the sheriff, or that which is disclosed by interrogatories, so that it may be taken, that can be condemned." It will be remembered that under sec. 10 of Art. 9, Code (1912), *"Any kind of property* or credits belonging to the defendant in the plaintiff's own hands, or in the hands of anyone else, may be attached; and credits may be attached which shall not then be due." It may be that it would have been better practice if the plaintiffs had instructed the sheriff to demand of the garnishees the right to seize the bonds, and upon their failure to do so to so return to the Court, but it would certainly have been an idle form for the sheriff to have made such demand, as the garnishees could not with safety have surrendered the bonds, and of course the sheriff could not have broken into the vaults of the Safe Deposit Co. in order to levy on them. But he returned that he had laid the attachments in the hands of the American Bonding Company and of Alexander Brown & Sons, and both of those garnishees answered. Alexander Brown & Sons referred in their answer to the letter of October 28th, 1908, in reference to the bonds, and said they had a balance of $8.16 which they had received from the coupons. The American Bonding Company said that the Prince had deposited in a safe deposit box of the Safe Deposit Company, standing in the names of the bonding company and of Alexander Brown & Sons the coupon bonds, describing them as registered in the names of the two children respectively, and gave the contents of the letter of October 28th, 1908, which has appeared so frequently in the records in these cases. It said it had no knowledge that the bonds belonged to any person other than those in whose names they were registered, and therefore they could not say whether they belonged to the Prince or not. Shortly afterwards the plaintiffs notified both garnishees that by the attachments it was intended to bind the bonds, describing them. Later an affidavit of one of the members of the firm

of Alexander Brown & Sons was filed, describing the bonds still more accurately by giving their numbers, etc. The defendant filed motions to quash the attachments and relied on the fact that it appeared upon the face of the proceedings that the property sought to be attached consisted of these bonds, which he claimed were not subject to attachment. Then as we have seen he filed motions to discharge and release the bonds "from the operation of these attachment proceedings" and the lower Court did release and discharge them.

As is seen by the quotation from *Hodge & McLane, supra,* the plaintiffs could have filed interrogatories and have required the garnishees to disclose the property in their hands, and property which is disclosed by interrogatories, so that it may be taken, can be condemned, and it is not necessary that it shall be seized and scheduled if that is done. In this case it was not neccessary to file interrogatories because the garnishees and defendant disclosed what was held by the garnishees, the defendant, so disclosing by his motions and by the affidavit of one of the firm of Alexander Brown & Sons. "While it is a usual and convenient mode of eliciting information, for the plaintiff to file interrogatories, it is still not incumbent upon him to resort to them, and even if they have been filed, the plaintiff may waive them and adopt other means to ascertain what property of the defendant the garnishee may have." *Hodge and McLane on Attachments,* sec. 87. He "may, by witnesses or other means, or by the garnishee himself, show that the garnishee had effects of the defendant, or was indebted to him," *ibid.*

In *Corner* v. *Mackintosh,* 48 Md. 387, JUDGE ALVEY, speaking for the Court, said: "It is always proper, when a party is found in possession of lands or chattels which are attached, that he should be returned as garnishee: Code (1860); Art. 10, sec. 12; *Barney* v. *Patterson,* 6 H. & J. 201. But this is required in respect to the party's apparent relation to the property, and in order to give him a day in Court to

assert and vindicate any right that he may have, inconsistent with the right of condemnation. The judgment of condemnation, however, in such case, is not against the garnishee, but of the particular lands or chattels attached; and a *fieri facias* goes to the sheriff, commanding him to sell the property thus condemned. 2 *Harris Ent.* 83, 680; *Davidson's Lessee* v. *Beatty,* 3 H. & McH. 615, 616."

In *Morton* v. *Grafflin,* 68 Md. 545, the Court had on page 565 said what is quoted above from *Hodge and McLane,* as to discovery by interrogatories property in the hands of a garnishee and in passing on a motion for reargument, on page 568 it said: "If it be chattel property, the same being lawfully and *bona fide* in the hands of another, and can not be taken from his position, and if the sheriff can not schedule and describe it, for lack of knowledge, of course the plaintiff has his right to interrogate the garnishee and thus get such a description of the property into the record, so that the judgment of condemnation of the equitable interest may be definite and certain. When the appellant has secured such condemnation of such equitable interest he will be in position to claim the aid of equity to make it available, but not before."

It is therefore well settled in this State that it is not necessary in all cases that there be an actual seizure of the property, but when it can not be seized and taken from the hands of a garnishee the plaintiff has the right to interrogate the garnishee "and thus get such a description of the property into the record, so that the judgment of condemnation of the equitable interest may be definite and certain." In these cases, as we have seen, the necessary information has been obtained without interrogatories, and the judgments of condemnation accurately describe the bonds. Of course, the great objects in requiring a seizure and schedule by the sheriff are to give notice to the public and to be certain and definite about the property to be affected, and when there are garnishees they have the right to know what property is attempted to be affected and what is

demanded of them. There is no controversy between these attaching creditors and other creditors or third parties, but it is between them and the defendant. The garnishees not only knew what was sought to be affected in their hands, but they answered frankly and furnished the Court with accurate and definite descriptions of the bonds, and informed it of the terms under which they were held by them. That should be sufficient, but it is by no means all, for the defendant himself sought to defeat these attachments by giving as a reason for his motion to quash: "Because it appears upon the face of the proceedings that the property sought to be attached and which is mentioned and referred · to in the schedule filed herein consists solely of bonds," etc.; and in his amended motion, "Because as appears upon the facts of the proceedings, that which is sought to be attached herein consists solely of," etc.; and in still another amended motion the ground was that the notice served on the garnishees showed that it was intended to reach these bonds. Then he filed his motion to have the bonds released from the operation of these attachments, as we have seen above. He succeeded in that motion in the lower Court, sought to sustain it in this Court and then asked the aid of the Supreme Court of the United States. So there can be no possible doubt that the bonds were accurately and sufficiently described to protect all parties and to justify judgments of condemnation of them, if they were liable to attachments, which we have held they were.

By reason of what we have already said in this and other decisions of this Court in reference to these bonds, it is not necessary to discuss at length the defendant's Point 3—that "The 'judgment of condemnation' was rendered without jurisdiction over any property of the defendant in this State." This property was here, was awarded to the defendant by the decision of this Court and is still under the jurisdiction of the lower Court. The theory of the defendant seems to be that just as soon as it was awarded to him it ceased to be here, although he could not get possession of the bonds with-

out the further action of the Courts in this State. The bonds themselves were in the City of Baltimore when the case was decided in his favor in 1909, and one hundred and fifty-six of them might have remained there for twenty-one years and twenty-nine of them for eighty-nine years after that decision without being taken out of the State, so far as the obligors were concerned. They could be recovered here, could be sold here, at least as soon as the registration of them, which we have said was improper, is cancelled, and they seem to be here for every purpose but being made liable for the payment of the owner's debts. Of course we understand that under some circumstances bonds which have been registered can not be seized and sold by the sheriff without the risk of great sacrifice or injustice being done, but we have pointed out in other decisions concerning these bonds that there is no danger of either under existing conditions. If they can not be reached under such circumstances as we have before us, then a debtor, although worth many millions, can arrange to have his wealth locked up in a safe deposit vault or otherwise under the control of a third party and defy his creditors. It would be a useless and meaningless remedy to offer his creditors to tell them to lay attachments in the hands of the companies issuing such bonds as these,—twenty-nine of which are not due until 1997 and the remainder in 1930, and of course when the coupons, as in this case, are not registered, they are payable to bearer and there would be no way of reaching them by a garnishment in the hands of the obligors.

The only remaining question to be considered is that in reference to the sufficiency of the causes of action filed with the attachments. Under Section 28 of Article 9 of the Code, the affidavit, short note, declaration, vouchers, pleadings, interrogatories, claim of property and all other papers in attachment proceedings can be amended in the same manner and to the safe extent as the proceedings in any other suits or actions at law, "so that all attachment cases may be tried on their real merits and the purposes of justice subserved;

nor shall any proceedings be quashed or set aside for any defects in mere matters of form." These records fail to show that objection was made in the lower Court at any time to these attachments on this ground. If there had been such objections, under our present practice the causes of action could have been amended, if deemed necessary or proper. While the defendant did not appear to the *capias* cases he has been represented by counsel throughout in the attachment cases, and we do not feel called upon or at liberty to now inquire into the sufficiency of the causes of action. The defendant has certainly had every opportunity to make his defenses, if any of these claims were not due by him, and while we would greatly regret a recovery against him of any amount not honestly due by him, if there be such included in any of these judgments of condemnation, it is not because he has not had the fullest opportunity to contest them. It is true that he does not live in this country but neither does either of the attaching creditors, and our laws provide full and adequate means of obtaining the depositions of such parties to suits. We will affirm the judgments.

> *Judgment of condemnation in each case affirmed, the appellant to pay the costs.*